(Slip Opinion)                OCTOBER TERM, 2022                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TURKIYE HALK BANKASI A. S., aka HALKBANK *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 21–1450.  Argued January 17, 2023—Decided April 19, 2023

The United States indicted Halkbank, a bank owned by the Republic of Turkey, for conspiring to evade U. S. economic sanctions against Iran. Halkbank moved to dismiss the indictment on the ground that as an instrumentality of a foreign state, Halkbank is immune from criminal prosecution under the Foreign Sovereign Immunities Act of 1976. The District Court denied the motion. The Second Circuit affirmed after first determining that the District Court had subject matter jurisdiction over Halkbank's criminal prosecution under 18 U. S. C. §3231. The Second Circuit further held that even assuming the FSIA confers immunity in criminal proceedings, Halkbank's charged conduct fell within the FSIA's exception for commercial activities.

*Held*:

   1. The District Court has jurisdiction under §3231 over this criminal prosecution of Halkbank. Section 3231 grants district courts original jurisdiction of "all offenses against the laws of the United States," and Halkbank does not dispute that §3231's text as written encompasses the charged offenses. Halkbank instead argues that because §3231 does not mention foreign states or their instrumentalities, §3231 implicitly excludes them. The Court declines to graft such an atextual limitation onto §3231's broad jurisdictional grant. The scattered express references to foreign states and instrumentalities in unrelated U. S. Code provisions to which Halkbank points do not shrink the textual scope of §3231. And the Court's precedents interpreting the Judiciary Act of 1789 do not support Halkbank, as the Court has not interpreted the jurisdictional provisions in the 1789 Act to contain an implicit exclusion for foreign state entities. Pp. 3–5.

   2. The FSIA's comprehensive scheme governing claims of immunity

2          TURKIYE HALK BANKASI A. S. *v.* UNITED STATES

Syllabus

in civil actions against foreign states and their instrumentalities does not cover criminal cases.  Pp. 5–14.

(a) The doctrine of foreign sovereign immunity originally developed in U. S. courts "as a matter of common law" rather than statute.  *Samantar* v. *Yousuf*, 560 U. S. 305, 311.  In 1976, Congress enacted the FSIA, which prescribed a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state."  *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 488.  The text of the FSIA indicates that the statute exclusively addresses civil suits.  The first provision grants district courts original jurisdiction over "any nonjury civil action against a foreign state" as to "any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U. S. C. §1330(a).  The FSIA then sets forth a carefully calibrated set of procedures and remedies applicable exclusively in civil, not criminal, cases.  Further, Congress described the FSIA as defining "the circumstances in which foreign states are immune from suit," not from criminal investigation or prosecution.  90 Stat. 2891.  In stark contrast, the FSIA is silent as to criminal matters, even though at the time of the FSIA's enactment in 1976, the Executive Branch occasionally attempted to subject foreign-government-owned entities to federal criminal investigation.  If Halkbank were correct, immunity from criminal prosecution undoubtedly would have surfaced somewhere in the Act's text.  Moreover, the FSIA's location in the U. S. Code—Title 28, which mostly concerns civil procedure, rather than Title 18, which addresses crimes and criminal procedure—likewise reinforces the interpretation that the FSIA does not apply to criminal proceedings.  Finally, this Court's decision in *Samantar*, in which the Court analyzed the FSIA's "text, purpose, and history" and determined that the FSIA's "comprehensive solution" for suits against foreign states did not extend to suits against individual officials, 560 U. S., at 323, 325, similarly supports the conclusion here that the FSIA's provisions do not extend to the discrete context of criminal proceedings.  Pp. 5–9.

(b) In response to all the evidence of the FSIA's exclusively civil scope, Halkbank claims immunity from criminal prosecution based on one sentence in the FSIA, which provides that a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."  28 U. S. C. §1604.  Section 1604, however, must be considered in context.  Section 1604 works in tandem with §1330(a): Section 1330(a) spells out a universe of civil cases against foreign states over which district courts have jurisdiction, and §1604 then clarifies how principles of immunity operate within that limited civil universe.  Halkbank's interpretation of §1604 is also difficult to square with its

Syllabus

view of the exceptions to immunity contained in §1605, which Halkbank insists apply exclusively in civil matters. Halkbank's §1604 argument reduces to the implausible contention that Congress enacted a statute focused entirely on civil actions and then in one provision that does not mention criminal proceedings somehow stripped the Executive Branch of all power to bring domestic criminal prosecutions against instrumentalities of foreign states. Nothing in the FSIA supports that result. Pp. 10–12.

(c) Halkbank's remaining arguments lack merit. While the Court did state in *Argentine Republic* v. *Amerada Hess Shipping Corp.* that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court," 488 U. S. 428, 439, the Court made clear that the FSIA displaces general "grants of subject-matter jurisdiction in Title 28"—that is, in civil cases against foreign states, *id.*, at 437. Halkbank also warns that if the Court concludes that the FSIA does not apply in the criminal context, courts and the Executive will lack "congressional guidance" as to procedure in criminal cases. But that concern carried no weight in *Samantar*, which likewise deemed the FSIA's various procedures inapplicable to a specific category of cases—there, suits against foreign officials. And in any event, the Federal Rules of Criminal Procedure would govern any federal criminal proceedings. Finally, Halkbank argues that U. S. criminal proceedings against instrumentalities of foreign states would negatively affect national security and foreign policy. But the Court must interpret the FSIA as written. And if existing principles do not suffice to protect national security and foreign policy interests, Congress and the President may always respond. Pp. 12–14.

3. The Second Circuit did not fully consider various common-law immunity arguments that the parties raise in this Court. The Court vacates the judgment and remands for the Second Circuit to consider those arguments. Pp. 14–16.

16 F. 4th 336, affirmed in part, vacated and remanded in part.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, SOTOMAYOR, KAGAN, BARRETT, and JACKSON, JJ., joined. GORSUCH, J., filed an opinion concurring in part and dissenting in part, in which ALITO, J., joined.

Cite as: 598 U. S. ____ (2023) 1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES
_____

No. 21–1450
_____

## TURKIYE HALK BANKASI A. S., AKA HALKBANK, PETITIONER v. UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[April 19, 2023]

JUSTICE KAVANAUGH delivered the opinion of the Court.

The United States indicted Halkbank, a bank owned by the Republic of Turkey, for conspiring to evade U. S. economic sanctions against Iran. The United States brought the prosecution in the U. S. District Court for the Southern District of New York. Halkbank contends that the indictment should be dismissed because the general federal criminal jurisdiction statute, 18 U. S. C. §3231, does not extend to prosecutions of instrumentalities of foreign states such as Halkbank. Halkbank alternatively argues that the Foreign Sovereign Immunities Act of 1976 provides instrumentalities of foreign states with absolute immunity from criminal prosecution in U. S. courts.

We disagree with Halkbank on both points. We hold that the District Court has jurisdiction under 18 U. S. C. §3231 over the prosecution of Halkbank. We further hold that the Foreign Sovereign Immunities Act does not provide immunity from criminal prosecution. With respect to an additional common-law immunity argument raised by Halkbank, we vacate the judgment of the Court of Appeals and remand.

Opinion of the Court

## I

Halkbank is a bank whose shares are majority-owned by the Turkish Wealth Fund, which in turn is part of and owned by the Republic of Turkey. In 2019, the United States indicted Halkbank for a multi-year conspiracy to evade economic sanctions imposed by the United States on Iran. The indictment alleged that Halkbank, with the assistance of high-ranking Turkish government officials, laundered billions of dollars of Iranian oil and gas proceeds through the global financial system, including the U. S. financial system, in violation of U. S. sanctions and numerous federal statutes. The indictment further claimed that Halkbank made false statements to the U. S. Treasury Department in an effort to conceal the scheme. Two individual defendants, including a former Halkbank executive, have already been convicted in federal court for their roles in the alleged conspiracy. According to the U. S. Government, several other indicted defendants, including Halkbank's former general manager and its former head of foreign operations, remain at large.

Halkbank moved to dismiss the indictment on the ground that an instrumentality of a foreign state such as Halkbank is immune from criminal prosecution under the Foreign Sovereign Immunities Act of 1976, 28 U. S. C. §§1330, 1602 *et seq.* The U. S. District Court for the Southern District of New York denied the motion, reasoning in relevant part that the FSIA "does not appear to grant immunity in criminal proceedings." App. to Pet. for Cert. 25a, 34a.

Halkbank filed an interlocutory appeal, and the U. S. Court of Appeals for the Second Circuit affirmed. 16 F. 4th 336 (2021). The Court of Appeals first determined that the District Court has subject matter jurisdiction over this criminal prosecution under 18 U. S. C. §3231. As to the FSIA, the Court of Appeals assumed without deciding that the FSIA confers immunity in criminal proceedings to foreign states and their instrumentalities, but held that in

any event Halkbank's charged conduct fell within the FSIA's exception for commercial activities.

We granted certiorari. 598 U. S. ___ (2022).

## II

Halkbank first contends that the District Court lacks jurisdiction over this criminal prosecution.

Section 3231 of Title 18 provides: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Via its sweeping language, §3231 opens federal district courts to the full range of federal prosecutions for violations of federal criminal law. By its terms, §3231 plainly encompasses Halkbank's alleged criminal offenses, which were "against the laws of the United States."

Halkbank cannot and does not dispute that §3231's text as written encompasses the offenses charged in the indictment. Halkbank nonetheless argues that the statute implicitly excludes foreign states and their instrumentalities. In support of that argument, Halkbank identifies certain civil and bankruptcy statutes that expressly refer to actions against foreign states and their instrumentalities. See 28 U. S. C. §§1330(a), 1603(a)–(b); 11 U. S. C. §§101(27), 106(a); Act of Mar. 3, 1875, ch. 137, §1, 18 Stat. 470, as amended, §3, 90 Stat. 2891. Because §3231 refers generically to "all" federal criminal offenses without specifically mentioning foreign states or their instrumentalities, Halkbank reasons that foreign states and their instrumentalities do not fall within §3231's scope.

We decline to graft an atextual limitation onto §3231's broad jurisdictional grant over "all offenses" simply because several unrelated provisions in the U. S. Code happen to expressly reference foreign states and instrumentalities. Those scattered references in distinct contexts do not shrink the textual scope of §3231, which operates "without

regard to the identity or status of the defendant."  C. Keitner, Prosecuting Foreign States, 61 Va. J. Int'l L. 221, 242 (2021).  Nor will we create a new clear-statement rule requiring Congress to "clearly indicat[e] its intent" to include foreign states and their instrumentalities within §3231's jurisdictional grant.  Brief for Petitioner 11.

Halkbank also points to §3231's predecessor: a provision of the Judiciary Act of 1789 granting district courts "cognizance of all crimes and offences that shall be cognizable under the authority of the United States."  §9, 1 Stat. 76.  In Halkbank's view, other statutory provisions from that same era—including several that referred to suits against foreign actors—suggest that Congress would have expressly referenced foreign states and their instrumentalities if Congress had intended the 1789 provision to reach those entities.  And Halkbank says that we should read §3231 like its predecessor provision.  The premise is unsupported.  The 1789 provision, like §3231 itself, contains no exception for prosecutions of foreign states or their instrumentalities.  And this Court has never suggested that the 1789 provision contains an implicit exception.  So the 1789 provision does not help Halkbank's argument that we should find an implicit exception in §3231.

Finally, Halkbank invokes a separate provision of the 1789 Judiciary Act granting district courts jurisdiction over "all civil causes of admiralty and maritime jurisdiction."  §9, *id.*, at 77.  Halkbank asserts that this Court has construed that provision not to confer jurisdiction over foreign state entities.  Brief for Petitioner 22, 25 (citing *Schooner Exchange* v. *McFaddon,* 7 Cranch 116 (1812)).  It follows, Halkbank says, that the 1789 Act's similar general reference to "all crimes and offences" and its successor §3231's reference to "all offenses" likewise must be interpreted not to reach foreign states and their instrumentalities.

Opinion of the Court

We disagree with Halkbank's reading of our precedents. The case on which Halkbank primarily relies, *Schooner Exchange*, indeed held that a district court lacked "jurisdiction" over a suit claiming ownership of a French warship docked in a Philadelphia port. 7 Cranch, at 146–147. But *Schooner Exchange* did not address statutory subject matter jurisdiction. Instead, as this Court has since explained, *Schooner Exchange* concerned principles of foreign sovereign immunity that "developed as a matter of common law." *Samantar* v. *Yousuf*, 560 U. S. 305, 311 (2010). Contrary to Halkbank's contention, the common-law sovereign immunity recognized in *Schooner Exchange* is a "rule of substantive law governing the exercise of the jurisdiction of the courts," not an exception to a general statutory grant of subject matter jurisdiction. *Republic of Mexico* v. *Hoffman*, 324 U. S. 30, 36 (1945); see also *Ex parte Peru*, 318 U. S. 578, 587–588 (1943).

In sum, the District Court has jurisdiction under 18 U. S. C. §3231 over this criminal prosecution.

## III

Relying on the Foreign Sovereign Immunities Act, Halkbank contends that it enjoys immunity from criminal prosecution. We disagree because the Act does not provide foreign states and their instrumentalities with immunity from *criminal* proceedings.

### A

The doctrine of foreign sovereign immunity originally developed in U. S. courts "as a matter of common law" rather than by statute. *Samantar* v. *Yousuf*, 560 U. S. 305, 311 (2010). In determining whether to allow suits against foreign sovereigns, however, courts traditionally "deferred to the decisions of the political branches—in particular, those of the Executive Branch." *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 486 (1983); see also *Rubin*

Opinion of the Court

v. *Islamic Republic of Iran*, 583 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 4); *Republic of Austria* v. *Altmann*, 541 U. S. 677, 689 (2004).

In 1952, the State Department announced the "restrictive" theory of foreign sovereign immunity, under which immunity was typically afforded in cases involving a foreign state's public acts, but not its strictly commercial acts. *Rubin*, 583 U. S., at \_\_\_–\_\_\_ (slip op., at 4–5). In the ensuing years, the process by which the Executive Branch submitted statements regarding a foreign state's immunity sometimes led to inconsistency, particularly in light of the case-by-case diplomatic pressure that the Executive Branch received from foreign nations. *Verlinden*, 461 U. S., at 487. And when foreign states did not ask the State Department to weigh in, courts were left to render immunity rulings on their own, generally by reference to prior State Department decisions. *Opati* v. *Republic of Sudan*, 590 U. S. \_\_\_, \_\_\_ (2020) (slip op., at 2); *Verlinden*, 461 U. S., at 487.

In 1976, Congress entered the fray and sought to standardize the judicial process with respect to immunity for foreign sovereign entities in civil cases. Congress passed and President Ford signed the Foreign Sovereign Immunities Act. The FSIA prescribed a "comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state." *Id.*, at 488.

To that end, the FSIA codifies a baseline principle of immunity for foreign states and their instrumentalities. 28 U. S. C. §1604. The FSIA then sets out exceptions to that principle—including, for example, the exception for commercial activities. §§1605–1607.

The FSIA defines a "foreign state" to encompass instrumentalities of a foreign state—including entities that are directly and majority-owned by a foreign state. §§1603(a)–(b); *Dole Food Co.* v. *Patrickson*, 538 U. S. 468, 473–474 (2003). (In this case, the United States does not contest Halkbank's status as an instrumentality of a

foreign state for purposes of the FSIA. Brief for United States 28; see also 16 F. 4th, at 342, n. 8.)

Since the FSIA's enactment, this Court has repeatedly stated that the statute applies in "civil" actions. See, *e.g.*, *Cassirer* v. *Thyssen-Bornemisza Collection Foundation*, 596 U. S. ___, ___ (2022) (slip op., at 5); *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U. S. 134, 141 (2014); *Altmann*, 541 U. S., at 691; *Verlinden*, 461 U. S., at 488. Although the Court has not expressly held that the FSIA covers *only* civil matters, the Court has never applied the Act's immunity provisions in a criminal case.

We now hold that the FSIA does not grant immunity to foreign states or their instrumentalities in criminal proceedings. Through the FSIA, Congress enacted a comprehensive scheme governing claims of immunity in civil actions against foreign states and their instrumentalities. That scheme does not cover criminal cases.

1

To begin with, the text of the FSIA indicates that the statute exclusively addresses civil suits against foreign states and their instrumentalities. The first provision of the FSIA grants district courts original jurisdiction over "any nonjury *civil* action against a foreign state" as to "any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U. S. C. §1330(a) (emphasis added); 90 Stat. 2891.

The FSIA then sets forth a carefully calibrated scheme that relates only to civil cases. For instance, the sole FSIA venue provision exclusively addresses venue in a "civil action" against a foreign state. §1391(f). The Act similarly provides for removal to federal court of a "civil action" brought in state court. §1441(d). The Act prescribes detailed rules—including those governing service of "the summons and complaint," §1608(a)(1), along with "an

answer or other responsive pleading to the complaint," §1608(d), as well as for any judgment of default, §1608(e)— that relate to civil cases alone. So, too, the Act's provision regarding counterclaims concerns only civil proceedings. §1607. Finally, the Act renders a non-immune foreign state "liable in the same manner and to the same extent as a private individual," except that a foreign state (but not an agency or instrumentality thereof) "shall not be liable for punitive damages." §1606. Each of those terms characterizes civil, not criminal, litigation.

Other parts of the statute underscore the FSIA's exclusively civil focus. Congress codified its finding that authorizing federal courts to determine claims of foreign sovereign immunity "would protect the rights of both foreign states and *litigants* in United States courts." §1602 (emphasis added). The statutory term "litigants" does not ordinarily sweep in governments acting in a prosecutorial capacity. See Black's Law Dictionary 1119 (11th ed. 2019) (defining "litigant" as "A party to a lawsuit; the plaintiff or defendant in a court action"). What is more, Congress described the FSIA as defining "the circumstances in which foreign states are immune *from suit*," not from criminal investigation or prosecution. 90 Stat. 2891 (emphasis added).

In stark contrast to those many provisions concerning civil actions, the FSIA is silent as to criminal matters. The Act says not a word about criminal proceedings against foreign states or their instrumentalities. If Halkbank were correct that the FSIA immunizes foreign states and their instrumentalities from criminal prosecution, the subject undoubtedly would have surfaced somewhere in the Act's text. Congress typically does not "hide elephants in mouseholes." *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001).

Context reinforces text. Although the vast majority of litigation involving foreign states and their

Opinion of the Court

instrumentalities at the time of the FSIA's enactment in 1976 was civil, the Executive Branch occasionally attempted to subject foreign-government-owned entities to federal criminal investigation. See *In re Grand Jury Investigation of Shipping Industry*, 186 F. Supp. 298, 318–320 (DC 1960); *In re Investigation of World Arrangements*, 13 F. R. D. 280, 288–291 (DC 1952). Given that history, it becomes even more unlikely that Congress sought to codify foreign sovereign immunity from criminal proceedings without saying a word about such proceedings.

Congress's determination about the FSIA's precise location within the U. S. Code bolsters that inference. Congress expressly decided to house each provision of the FSIA within Title 28, which mostly concerns civil procedure. See 90 Stat. 2891. But the FSIA did not alter Title 18, which addresses crimes and criminal procedure.

Finally, this Court's decision in *Samantar* supports the conclusion that the FSIA does not apply to criminal proceedings. In *Samantar*, we considered whether the FSIA's immunity provisions applied to a suit against an individual foreign official based on actions taken in his official capacity. 560 U. S., at 308. Analyzing the Act's "text, purpose, and history," the Court determined that the FSIA's "comprehensive solution for suits against states" does not "exten[d] to suits against individual officials." *Id.*, at 323, 325.

As in *Samantar*, we conclude here that the FSIA's provisions concerning suits against foreign states and their instrumentalities do not extend to a discrete context—in this case, criminal proceedings. The Act's "careful calibration" of jurisdiction, procedures, and remedies for civil litigation confirms that Congress did not "cover" criminal proceedings. *Id.,* at 319. Put simply, immunity in criminal proceedings "was not the particular problem to which Congress was responding." *Id.*, at 323.

2

In response to all of that evidence of the FSIA's exclusively civil scope, Halkbank emphasizes a sentence of the FSIA codified at 28 U. S. C. §1604: "Subject to existing international agreements," a "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." Halkbank contends that §1604 renders it immune not only from civil suits but also from criminal prosecutions.

In complete isolation, §1604 might be amenable to that reading. But this Court has a "duty to construe statutes, not isolated provisions." *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. 280, 290 (2010) (internal quotation marks omitted). And the Court must read the words Congress enacted "in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). When we consider §1604 alongside its neighboring FSIA provisions, it becomes overwhelmingly evident that §1604 does not grant immunity to foreign states and their instrumentalities in criminal matters.

Section 1330(a) is the place to start. This Court has explained that "Sections 1604 and 1330(a) work in tandem." *Argentine Republic* v. *Amerada Hess Shipping Corp.*, 488 U. S. 428, 434 (1989). Indeed, the public law containing the FSIA begins with §1330 and then later follows with §1604. See 90 Stat. 2891–2892. Recall that §1330(a) confers district-court jurisdiction over "any nonjury civil action against a foreign state" as to "any claim for relief in personam with respect to which the foreign state is not entitled to immunity." Section 1604 then confers immunity on foreign states unless an enumerated statutory exception applies. See §§1605–1607.

Reading the two provisions together (as we must) and

Opinion of the Court

sequentially (per Congress's design), the natural inference is that §1604 operates exclusively in civil cases. Section 1330(a) spells out a universe of civil (and only civil) cases against foreign states over which district courts have jurisdiction, and §1604 then clarifies how principles of immunity operate within that limited civil universe.

We thus decline to read §1604's grant of immunity to apply in criminal proceedings—a category of cases beyond the civil actions contemplated in §1330(a), the jurisdictional grant to which §1604 is substantively and sequentially linked. Before making that leap, we would expect to find some express textual indication regarding §1604's purportedly broader-than-civil scope. But none exists.

Moreover, Halkbank's interpretation of §1604 is difficult to square with its interpretation of §1605, an FSIA provision delineating exceptions to the immunity granted in §1604. Halkbank reads §1604 to confer immunity in both civil and criminal cases. But Halkbank then turns around and insists that the exceptions to that immunity specified in §1605—exceptions which, per the statute, apply "in any case"—attach exclusively in civil matters. Brief for Petitioner 43.

In other words, Halkbank sees §1330 as operating only in civil cases, §1604 in both civil and criminal cases, and §1605 only in civil cases. In Halkbank's view, the FSIA's scope awkwardly flip-flops from civil to civil-and-criminal back to civil again in sequential provisions. Congress did not write such a mangled statute. The better and more natural reading is that §§1330, 1604, and 1605 operate in tandem within a single universe of civil matters.

The FSIA's remaining provisions described above—namely, those detailing elaborate procedures and remedies applicable exclusively in civil cases—strongly buttress the conclusion that §1604 "lays down a baseline principle of foreign sovereign immunity from *civil actions*," and from civil actions alone. *Cassirer*, 596 U. S., at ___ (slip op., at 5)

Opinion of the Court

(emphasis added). Considering the FSIA "as a whole," there is "nothing to suggest we should read" §1604 to apply to criminal proceedings. *Samantar*, 560 U. S., at 319.

In sum, Halkbank's narrow focus on §1604 misses the forest for the trees (and a single tree at that). Halkbank's §1604 argument reduces to the implausible contention that Congress enacted a statute focused entirely on civil actions and then in one provision that does not mention criminal proceedings somehow stripped the Executive Branch of all power to bring domestic criminal prosecutions against instrumentalities of foreign states. On Halkbank's view, a purely commercial business that is directly and majority-owned by a foreign state could engage in criminal conduct affecting U. S. citizens and threatening U. S. national security while facing no criminal accountability at all in U. S. courts. Nothing in the FSIA supports that result.

B

Halkbank advances three additional reasons why this Court should read the FSIA to immunize foreign states and their instrumentalities from criminal proceedings. None is persuasive.

*First*, Halkbank emphasizes this Court's statement in a 1989 case that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Amerada Hess*, 488 U. S., at 439. But *Amerada Hess* was not a criminal case. Rather, it was a civil case brought under the Alien Tort Statute and under the federal courts' general admiralty and maritime jurisdiction. *Id.,* at 432 (citing 28 U. S. C. §§1333, 1350). This Court has often admonished that "general language in judicial opinions" should be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Illinois* v. *Lidster*, 540 U. S. 419, 424 (2004). *Amerada Hess* made clear that the FSIA displaces general

Opinion of the Court

"grants of subject-matter jurisdiction in Title 28"—that is, in *civil* cases against foreign states. 488 U. S., at 437 (citing 28 U. S. C. §§1331, 1333, 1335, 1337, 1338). The Court had no occasion to consider the FSIA's implications for Title 18's grant of *criminal* jurisdiction over "all" federal criminal offenses. 18 U. S. C. §3231.

At any rate, *Amerada Hess*'s rationale does not translate to the criminal context. The Court's holding as to the nonapplicability of general civil jurisdictional grants was based on the FSIA's own civil jurisdictional grant and the "comprehensiveness" of the statutory scheme as to civil matters. 488 U. S., at 434–435, and n. 3, 437 (citing 28 U. S. C. §1330(a)). But the FSIA contains no grant of criminal jurisdiction and says nothing about criminal matters—a distinct legal regime housed in an entirely separate title of the U. S. Code. The FSIA did not implicitly repeal or modify 18 U. S. C. §3231's core grant of criminal jurisdiction.

*Second*, Halkbank warns that courts and the Executive will lack "congressional guidance" as to procedure in criminal cases if we conclude that the FSIA does not apply in the criminal context. Brief for Petitioner 37. But that concern carried no weight in *Samantar*, which likewise deemed the FSIA's various procedures inapplicable to a specific category of cases—there, suits against foreign officials. In any event, the Federal Rules of Criminal Procedure would govern any federal criminal proceedings. And although Halkbank argues that Congress would not have been "indifferent" to criminal jury trials involving instrumentalities of foreign states, *id.*, at 38, juries already resolve similarly sensitive cases against foreign officials after *Samantar*.

*Third*, Halkbank briefly raises a consequentialist argument. According to Halkbank, if the FSIA does not apply to criminal proceedings, then *state* prosecutors would also be free to commence criminal proceedings against

foreign states and their instrumentalities. Halkbank argues that those state prosecutions would raise foreign policy concerns. But we must interpret the FSIA as written. And the statute simply does not grant immunity to foreign states and their instrumentalities in criminal matters.

In addition, it is not evident that the premise of Halkbank's consequentialist argument is correct. To begin with, Halkbank offers no history of state prosecutors subjecting foreign states or their instrumentalities to criminal jurisdiction. And if such a state prosecution were brought, the United States could file a suggestion of immunity. A decision by a state court to deny foreign sovereign immunity might be reviewable by this Court (a question we do not here address). Moreover, state criminal proceedings involving foreign states or their instrumentalities might be preempted under principles of foreign affairs preemption (another question we do not here address). Cf. *American Ins. Assn.* v. *Garamendi*, 539 U. S. 396 (2003). And if those principles do not apply or do not suffice to protect U. S. national security and foreign policy interests, Congress and the President may always respond by enacting additional legislation.

In short, Halkbank's various FSIA arguments are infused with the notion that U. S. criminal proceedings against instrumentalities of foreign states would negatively affect U. S. national security and foreign policy. But it is not our role to rewrite the FSIA based on purported policy concerns that Congress and the President have not seen fit to recognize. The FSIA does not provide foreign states and their instrumentalities with immunity from criminal proceedings.

IV

Although the FSIA does not immunize Halkbank from criminal prosecution, Halkbank advances one other plea for

Opinion of the Court

immunity. In the context of a civil proceeding, this Court has recognized that a suit not governed by the FSIA "may still be barred by foreign sovereign immunity under the common law." *Samantar* v. *Yousuf*, 560 U. S. 305, 324 (2010). Halkbank maintains that principles of common-law immunity preclude this criminal prosecution even if the FSIA does not. To that end, Halkbank contends that common-law-immunity principles operate differently in criminal cases than in civil cases. See Brief for Petitioner 34–35, 44. And Halkbank argues that the Executive Branch cannot unilaterally abrogate common-law immunity by initiating prosecution. *Id.,* at 44.

The Government disagrees. Reasoning from pre-FSIA history and precedent, the Government asserts that the common law does not provide for foreign sovereign immunity when, as here, the Executive Branch has commenced a federal criminal prosecution of a commercial entity like Halkbank. See Brief for United States 21. In the alternative, the Government contends that any common-law immunity in criminal cases would not extend to commercial activities such as those undertaken by Halkbank. *Id.*, at 16–21.

The Court of Appeals did not fully consider the various arguments regarding common-law immunity that the parties press in this Court. See 16 F. 4th, at 350–351. Nor did the Court of Appeals address whether and to what extent foreign states and their instrumentalities are differently situated for purposes of common-law immunity in the criminal context. We express no view on those issues and leave them for the Court of Appeals to consider on remand. Cf. *Samantar*, 560 U. S., at 325–326.

\*    \*    \*

With respect to the holding of the Court of Appeals that the District Court has jurisdiction under 18 U. S. C. §3231, we affirm. With respect to the holding of the Court of

Opinion of the Court

Appeals that the FSIA does not provide immunity to Halkbank, we affirm on different grounds—namely, that the FSIA does not apply to criminal proceedings. With respect to common-law immunity, we vacate the judgment of the Court of Appeals and remand for the Court of Appeals to consider the parties' common-law arguments in a manner consistent with this opinion.

*It is so ordered.*

Cite as: 598 U. S. ____ (2023) 1

Opinion of GORSUCH, J.

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–1450

_____

## TURKIYE HALK BANKASI A. S., AKA HALKBANK, PETITIONER v. UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[April 19, 2023]

JUSTICE GORSUCH, with whom JUSTICE ALITO joins, concurring in part and dissenting in part.

For almost a half century, judges have known where to turn for guidance when deciding whether a foreign sovereign is susceptible to suit in an American court: Congress's directions in the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U. S. C. §1602 *et seq.* Sometimes the FSIA authorizes American courts to hear cases against foreign sovereigns; sometimes the statute immunizes foreign sovereigns from suit. Today, however, the Court holds that the FSIA's rules apply only in *civil* cases. To decide whether a foreign sovereign is susceptible to *criminal* prosecution, the Court says, federal judges must consult the common law. Respectfully, I disagree. The same statute we routinely use to analyze sovereign immunity in civil cases applies equally in criminal ones.

I

I begin from common ground. Congress has vested federal courts with subject-matter jurisdiction over cases involving "offenses against the laws of the United States." 18 U. S. C. §3231. The Court holds that this statute permits federal courts to hear cases alleging offenses committed by foreign sovereigns. I agree. As the Court explains, §3231's language grants subject-matter jurisdiction in broad terms

without regard to the nature of the defendant; nor are we free to "graft an atextual limitation onto" the law that would exempt foreign sovereigns from its reach. *Ante,* at 3. Of course, Türkiye Halk Bankasi (Halkbank) asserts that it is a sovereign entity and, as such, enjoys immunity from prosecution. But that does not change a thing. Generally, questions about sovereign immunity do not go to a court's subject-matter jurisdiction (something a court must consider in every case even if the parties do not). Instead, questions of sovereign immunity usually go to a court's personal jurisdiction over a particular defendant. And as with other personal-jurisdiction defenses, a sovereign may waive its immunity and consent to judicial proceedings if it wishes. See *PennEast Pipeline Co.* v. *New Jersey*, 594 U. S. ___, ___ (2021) (GORSUCH, J., dissenting) (slip op., at 2).

From that common ground, however, I part ways with the Court. Like the Second Circuit, I would analyze Halkbank's assertion of sovereign immunity under the terms of the FSIA. Start with 28 U. S. C. §1604, which sets forth the FSIA's general immunity rule. It provides in relevant part that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." Elsewhere, the statute defines a "foreign state" to include an "agency or instrumentality of a foreign state." §1603(a). And the statute defines an "agency or instrumentality" to include any "separate legal person," such as a corporation, that is an "organ" or "subdivision" of a foreign state and majority owned by a foreign state. §1603(b)(1)–(2).

Applying those rules here yields a ready answer. Halkbank is a corporation that is majority-owned by the government of Turkey. 16 F. 4th 336, 349 (CA2 2021). Accordingly, it qualifies as a foreign state entitled to immunity from suit under §1604 unless one of the exceptions provided in §§1605–1607 applies. And, it turns out, one such exception does apply. Section 1605(a)(2) instructs that a foreign

Opinion of GORSUCH, J.

sovereign is not entitled to immunity when "the action is based upon" certain "commercial activity" in or affecting the United States. In this case, the indictment sufficiently alleges that Halkbank has engaged in just those kinds of commercial activities. See No. 15 Cr. 867 (SDNY, Oct. 1, 2020), App. to Pet. for Cert. 36a–38a. Of course, this case comes to us on a motion to dismiss the indictment, and the question of immunity may be revisited as the case proceeds. But for now, nothing in the law precludes this suit, just as the Second Circuit held.

That the FSIA tells us all we need to know to resolve the sovereign immunity question in this case can come as no surprise. This Court has long acknowledged that "the [FSIA] must be applied by the district courts in every action against a foreign sovereign." *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 493 (1983). As we have put it, "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U. S. 134, 141–142 (2014). It's a rule that follows directly from the statutory text because "Congress established [in the FSIA] a comprehensive framework for resolving any claim of sovereign immunity." *Republic of Austria* v. *Altmann*, 541 U. S. 677, 699 (2004).

## II

Despite all this, the Court declines to apply the FSIA's directions governing foreign sovereign immunity. It holds that the statute's general immunity rule in §1604 speaks only to *civil* disputes. Any question about a foreign sovereign's immunity from *criminal* prosecution, the Court insists, must therefore be resolved under common-law principles. *Ante*, at 7, 15. In aid of its conclusion, the Court offers three principal arguments. But to my mind, none packs the punch necessary to displace the plain statutory text.

First, the Court points to 28 U. S. C. §1330. That provision grants federal courts subject-matter jurisdiction over civil cases against foreign sovereigns when one of the exceptions provided in §§1605–1607 applies. From this grant of civil jurisdiction, the Court reasons, it is a "natural inference" that §1604's immunity rule must apply only in civil cases. *Ante*, at 11. More naturally, however, it seems to me that any inference from §1330 runs the other way. Section 1330 shows that when Congress wanted to limit its attention to civil suits, it knew how to do so. Section 1604 contains no similar language restricting its scope to civil disputes. Instead, it speaks far more broadly, holding that a foreign state "shall be immune" unless a statutorily specified exception applies. Normally, when Congress includes limiting language in one section of a law but excludes it from another, we understand the difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*). See, *e.g., Bittner* v. *United States*, 598 U. S. 85, 94 (2023); *Department of Homeland Security* v. *MacLean*, 574 U. S. 383, 391 (2015). The Court's interpretation of the FSIA defies this traditional rule of statutory construction. Today, the Court does to §1604 exactly what it recognizes we may not do to §3231—grafting an atextual limitation onto the law's unambiguous terms (in this instance, adding a "civil"-only restriction).

Second, the Court suggests we should read §1604 as affording immunity only in civil cases because §1605's exceptions apply only in civil cases. *Ante*, at 11. But here both the premise and the conclusion seem to me mistaken. If some of §1605's exceptions apply only in civil cases, others speak more expansively. Take the exception relevant here. The commercial-activities exception found in §1605(a)(2) denies sovereign immunity "*in any case* . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." (Emphasis added). Nowhere does this exception distinguish between civil and

criminal actions. Besides, even if the Court's premise were correct and §1605's exceptions (somehow) applied only in civil actions, what would that prove? It might simply mean that Congress wanted a more generous immunity from criminal proceedings than civil suits.

Finally, the Court points to the FSIA's provisions regulating the venue and removal of civil actions against foreign sovereigns. *Ante*, at 7–8 (discussing §§1391(f) and 1441(d)). But once more, it seems to me this shows only that Congress knew how to speak specifically to civil suits when it wished to do so. Congress may have had reason to be especially concerned about the venue for civil suits too, given that almost all efforts to hale foreign sovereigns into U. S. courts have involved civil claims. Indeed, the parties and their *amici* struggled to find examples of criminal charges brought against foreign sovereigns either before or after the FSIA's adoption—not only in the United States, but in any country. Compare Brief for United States 25–26 with Reply Brief 7–9. I might be willing to spot the Court that the venue and removal provisions could help illuminate §1604's scope if that statute were ambiguous. But no one suggests that we have anything like that here. Section 1604 is as clear as a bell and we must abide by its direction that foreign sovereigns "shall be immune" absent some express statutory exception.

### III

After declaring that the FSIA applies only to civil suits, the Court holds that "the common law" controls the disposition of any claim of foreign sovereign immunity in criminal cases. *Ante*, at 15. Yet rather than decide whether the common law shields Halkbank from this suit, the Court shunts the case back to the Second Circuit to figure that out. All of which leaves litigants and our lower court colleagues with an unenviable task, both in this case and others sure to emerge. Many thorny questions lie down the

Opinion of Gorsuch, J.

"common law" path and the Court fails to supply guidance on how to resolve any of them.

Right out of the gate, lower courts will have to decide between two very different approaches. One option is to defer to the Executive Branch's judgment on whether to grant immunity to a foreign sovereign—an approach sometimes employed by federal courts in the years immediately preceding the FSIA's adoption. The other option is for a court to make the immunity decision looking to customary international law and other sources. Compare Brief for United States 21–26 with Brief for Professor Ingrid (Wuerth) Brunk et al. as *Amici Curiae* 6–25.

Whichever path a court chooses, more questions will follow. The first option—deferring to the Executive—would seem to sound in separation-of-powers concerns. But does this mean that courts should not be involved in making immunity determinations at all? And what about the fact that the strong deference cases didn't appear until the 20th century; were courts acting unconstitutionally before then? If not, should we be concerned that deference to the Executive's immunity decisions risks relegating courts to the status of potted plants, inconsistent with their duty to say what the law is in the cases that come before them? See, *e.g.*, Brief for Professor Ingrid (Wuerth) Brunk et al. as *Amici Curiae* 17–21.

The second option—applying customary international law—comes with its own puzzles. If the briefing before us proves anything, it is that customary international law supplies no easy answer to the question whether a foreign sovereign enjoys immunity from criminal prosecution. Compare Brief for Professor Roger O'Keefe as *Amicus Curiae* 11–16 with Brief for Mark B. Feldman et al. as *Amici Curiae* 12–13. Nor is it even altogether clear on what authority federal courts might develop and apply customary international law. Article VI of the Constitution does not list

Opinion of GORSUCH, J.

customary international law as federal law when it enumerates sources of "the supreme Law of the Land." And Article I vests Congress rather than the Judiciary with the power to "define and punish . . . Offences against the Law of Nations." §8, cl. 10. See *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 739–742 (2004) (Scalia, J., concurring in part and concurring in judgment); *Jesner* v. *Arab Bank, PLC*, 584 U. S. ___, ___–___ (2018) (GORSUCH, J., concurring in part and concurring in judgment) (slip op., at 4–5); *Nestlé USA, Inc.* v. *Doe*, 593 U. S. ___, ___ (2021) (GORSUCH, J., concurring) (slip op., at 3).

Perhaps Article III incorporated customary international law into federal common law. But since *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), federal courts have largely disclaimed the power to develop federal common law outside of a few reserved areas. See *Sosa*, 542 U. S., at 740–742 (opinion of Scalia, J.). And whether customary international law survives as a form of federal common law after *Erie* is a matter of considerable debate among scholars. Compare C. Bradley & J. Goldsmith, Customary International Law as Federal Common Law: A Critique of the Modern Position, 110 Harv. L. Rev. 815 (1997), with H. Koh, Is International Law Really State Law?, 111 Harv. L. Rev. 1824 (1998). Must lower courts confront this long-running debate to resolve a claim of foreign sovereign immunity in criminal cases? And if there is no federal law at work here that might apply under the Supremacy Clause, only general common-law principles, what constraints remain on *state* prosecutions of foreign sovereigns?

\*

Today's decision overcomplicates the law for no good reason. In the FSIA, Congress supplied us with simple rules for resolving this case and others like it. Respectfully, I would follow those straightforward directions to the same straightforward conclusion the Second Circuit reached: This case against Halkbank may proceed.