# 20-3499

In the United States Court of Appeals
for the Second Circuit

UNITED STATES OF AMERICA,
APPELLEE,

*v.*

REZA ZARRAB, AKA RIZA SARRAF, CAMELIA
JAMSHIDY, AKA KAMELIA JAMSHIDY, HOSSEIN
NAJAFZADEH, MOHAMMAD ZARRAB, AKA CAN
SARRAF, AKA KARTALMSD, MEHMET HAKAN ATILLA,
MEHMET ZAFER CAGLAYAN, ABI, SULEYMAN ASLAN,
LEVENT BALKAN, ABDULLAH HAPPANI,
DEFENDANTS,

TÜRKIYE HALK BANKASI A.S., AKA HALKBANK,
DEFENDANT-APPELLANT.

*RECONSIDERATION UPON REMAND BY
THE SUPREME COURT OF THE UNITED STATES*

**BRIEF ON REMAND FOR REPUBLIC OF TÜRKIYE
AS AMICUS CURIAE IN SUPPORT OF
APPELLANT HALKBANK**

David S. Saltzman
SALTZMAN & EVINCH, PLLC
1310 19th St NW
Washington, D.C. 20036
Telephone: (202) 372-0092
Telefax: (202) 318-0892

*Counsel for Amicus Curiae
Republic of Türkiye*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................I

TABLE OF AUTHORITIES ...........................................................II

INTEREST OF THE AMICUS CURIAE ......................................... 1

INTRODUCTION ......................................................................... 1

SUMMARY OF ARGUMENT ......................................................... 5

ARGUMENT ................................................................................. 7

   I.   HALKBANK IS A PART OF THE REPUBLIC OF TÜRKIYE, CREATED TO CARRY OUT TÜRKİYE'S SOVEREIGN FUNCTIONS.................................................. 7

     a.  Halkbank was Created for the Purpose of Carrying Out the State's Constitutional Duties. ............................................. 7

     b.  Halkbank Carries Out Governmental Functions. .............. 8

     c.  The Government of Türkiye Directly Controls and Oversees the Management of Halkbank. ........................................... 12

     d.  The Republic of Türkiye Directly Owns Halkbank............ 13

   II.  HALKBANK CARRIED OUT SOVEREIGN STATE ACTIVITIES IN MANAGING THE ACCOUNTS HOLDING IRAN'S PROCEEDS OF OIL AND GAS SALES TO TÜRKİYE.................................................................... 14

   III.  THE UNITED STATES SHOULD NOT PROSECUTE ORGANS OF A FOREIGN STATE.................................... 16

   IV.  THE PROSECUTION OF HALKBANK OFFENDS INTERNATIONAL COMITY............................................. 23

CONCLUSION................................................................ 26

(I)

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347 (1909) .............24

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) .....................................................................25

*Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004)........................18

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993)...............24

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013).............21

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,
   440 U.S. 391 (1979) .....................................................................23

*Morrison v. Nat'l Austl. Bank*, 561 U.S. 247 (2010) ........................21

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) .....................................................................23

*Owens v. Turkiye Halk Bankasi, AS*,
   No. 20-cv-2648, 2021 WL 638975 (S.D.N.Y. Feb. 16, 2021),
   *aff'd*, 2023 WL 3184617 (2d Cir. May 2, 2023)...........................22

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)................................25

*Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005)..........25

*Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435 (2019) ...................23

*The Schooner Exchange v. McFaddon*,
   11 U.S. (7 Cranch) 116 (1812).....................................................20

*Turkiye Halk Bankasi A.S. v. United States*,
   143 S. Ct. 940 (2023) ...................................................................13

**Page**

**Federal Cases—continued:**

*United States v. Turkiye Halk Bankasi A.S.,*
    16 F.4th 336 (2d Cir. 2021) ........................................20

## FOREIGN CASE

*Certain Iranian Assets (Iran v. U.S.),*
    Judgment, 2023 I.C.J. Rep. 164 (Mar. 30, 2023) ........................16

## FEDERAL CONSTITUTIONS AND STATUTES

U.S. Const. amend. XI ....................................................23

12 U.S.C. § 635 ...........................................................17

22 U.S.C. § 9612 ..........................................................17

28 U.S.C. § 1603 ..........................................................18

## FOREIGN CONSTITUTIONS AND STATUTES

Turkish Const.
    art. 165 ...........................................................12
    art. 166 .........................................................7, 17
    art. 167 .........................................................8, 17

Turkish Law No. 2284, Halkbank and Public Funds Law ...............7

Turkish Law No. 4603, Law on the Privatization of the State
    Commercial Banks ............................................13, 14

III

**Page**

## OTHER AUTHORITIES

Ahmet Salih Alacaci, *Turkey: President Erdogan Announces New Social Support Measures*, Anadolu Agency, Aug. 1, 2019, www.aa.com.tr/en/economy/turkey-president-erdogan-announces-new-social-support-measures/1358899 ......10

Annual Report of Republic of Turkiye for FY 2021, amend. no. 5 (Apr. 5, 2023). .........................................11

Black's Law Dictionary (6th ed. 1990) ...............................19

Hazel Fox & Philippa Webb, The Law of State Immunity (3d ed. 2013) ...............................................................22

Halkbank Articles of Association, art. 19 ..........................12

Dr. Meliksah Yasin Decl., *Owens v. Turkiye Halk Bankasi A.S.*, No. 20-cv-2648 (S.D.N.Y. Sept. 25, 2020), Dkt. 64.............13

Press Release, Dep't of State, Regarding Significant Reductions of Iranian Crude Oil Purchases (June 11, 2012) .....15

Restatement (Second) of Foreign Relations Law § 8 (1965) ...........20

Restatement (Third) of Foreign Relations Law pt. IV, ch. 1 (1987) ........................................................................19

*Turkish Government to Launch New Credit Guarantee Fund to Ease Tradespeople's Access to Financing,* Hürriyet Daily News, Feb. 6, 2017, www.hurriyetdailynews.com/turkish-govt-to-launch-new-credit-guarantee-fund-to-ease-tradespeoples-access-to-financing-109391.........................................................................9

U.N. Charter art. 2 ...........................................................19

IV

## INTEREST OF THE *AMICUS CURIAE*[1]

*Amicus curiae* Republic of Türkiye ("Türkiye") is a sovereign state. Appellant Türkiye Halk Bankası Anonim Şirketi ("Halkbank" or the "Bank") is part and parcel of Türkiye. The prosecution of Halkbank in the United States is, therefore, of direct interest to Türkiye.

## INTRODUCTION

This case turns on a fundamental principle of international law: the immunity from the jurisdiction of foreign courts of a state institution for its sovereign actions. The actions of Halkbank, a Republic of Türkiye institution, should be immune from the jurisdiction of the courts of the United States. The prosecution of a foreign state institution like Halkbank departs from customary international law, aggravates

---

[1] Statement Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Local Rule 29.1(b): No party's counsel authored this amicus brief in whole or in part. No party or party's counsel contributed money intended to fund the preparation or submission of this amicus brief. No one other than amicus and its counsel contributed money intended to fund preparation or submission of this amicus brief.

Statement Pursuant to Federal Rule of Appellate Procedure 29(a)(2): Türkiye has filed a motion for leave to file this amicus curiae brief.

bilateral relations, and opens the door to further intrusive actions against state institutions here and abroad.

Situated in a volatile regional and global environment, Türkiye plays a crucial role in global security and economic affairs and contributes to peace, prosperity, and stability in its neighbourhood and beyond. In these endeavours, it benefits from deep-rooted traditions of diplomacy and derives strength from its central geographical position, rich historical experience, robust institutions, strong human resources, and dynamic economy.

The long-standing Turkish-American alliance within NATO has been a linchpin of the Euro-Atlantic security, economic, and political landscape since World War II. Indeed, Türkiye took an active part in the Korean War. Relations between Türkiye and the U.S. have diversified and intensified over time as the number and importance of overlapping interests have grown. The current regional and global environment has once again highlighted the relevance and importance of Türkiye–United States strategic relations. Both countries have overlapping interests and cooperation on many regional and global issues, such as Ukraine, Syria,

the Caucasus, counter-terrorism, energy and food security, and the post-pandemic global economic recovery. Türkiye and the United States launched a Strategic Mechanism in November 2021 to further deepen and strengthen their cooperation in the face of the evolving security environment and its manifold challenges. High-level engagement continues both through this platform as well as in other areas to this day.

Further, Türkiye is a founding member of numerous international security and development organizations, such as the United Nations, the Council of Europe, the Organization for Economic Cooperation and Development ("OECD"), the European Bank for Reconstruction and Development, the Organization for Security and Cooperation in Europe ("OSCE"), and the Organization for Islamic Cooperation ("OIC"). Türkiye is also a candidate country for European Union membership, with accession negotiations ongoing since 2005.

Supporting regional cooperation, Türkiye is also a founding member of initiatives such as the Black Sea Economic Cooperation Organization, the Southeast European Cooperation Process, and the Organization of Turkic States. While maintaining its close ties with the

3

neighbouring regions like the Balkans, the Middle East and North Africa, the Southern Caucasus, and South and Central Asia, Türkiye also reaches out to relatively distant geographies.

Türkiye also actively contributes to the efforts to address multiple global challenges. Türkiye is the largest humanitarian donor in the world based on per capita spending. Meanwhile, Türkiye hosts more refugees than any other country in the world, largely at its own expense. While playing a vital role in European and global energy security as an energy hub and transit country, it also contributes to global food security, as demonstrated by the Black Sea Grain Initiative.

With a population of over 85 million people, Türkiye is the world's 11th largest economy (according to purchasing power parity GDP figures in 2021) and Europe's 4th largest economy. It is an active member of the Group of Twenty ("G-20"). The Turkish economy expanded by 5.6% in 2022, while the real GDP growth rate of the first quarter of 2023 is 4.0%.

Türkiye and the United States are also major trade partners. The bilateral trade volume between the countries has broken historical records by exceeding $30 billion in 2022. Furthermore, Türkiye is the

4

seventh-largest importer of U.S.-sourced liquefied natural gas ("LNG") and the United States now is the single largest supplier of LNG to Türkiye. At present, there are approximately 1,970 U.S. companies in Türkiye with a total investment value of $14 billion. Turkish firms' investments in the U.S. have reached $9.7 billion.

## SUMMARY OF ARGUMENT

With this brief, Türkiye respectfully informs the Court of the relationship between it and Halkbank, including the unique sovereign functions carried out by the Bank generally and, more specifically, its role in maintaining the accounts holding revenues from Iran's oil and gas sales to Türkiye in compliance with sanctions rules. Since its creation by the Republic of Türkiye, Halkbank has been a component of the Republic of Türkiye, indistinguishable from the government itself. Thus, differentiating between the State and the Bank to prosecute the latter would be improper.

This brief also informs this Court of Turkish law and practice with respect to the criminal prosecution of sovereign entities. Türkiye acts in line with the principles of international law that respect the sovereign

immunity of foreign states and their instrumentalities from prosecution in its criminal courts. Türkiye expects and demands that its co-equal sovereign governments, including their judicial systems, likewise follow international law in their dealings with Türkiye. The Government asserts in the Indictment that Halkbank is owned by the State, and targets the sovereign activities of the Republic of Türkiye by alleging that "[h]igh-ranking government officials in Iran and [Turkiye] participated in and protected this scheme." J.A.20. However, Halkbank's underlying activities were to facilitate a public duty assigned to it regarding Türkiye's energy imports in accordance with the understanding reached with the United States. Therefore, this case concerns Türkiye's sovereignty. Equally importantly, the alleged banking transfers involving Halkbank were undertaken in Türkiye in territory controlled by Türkiye, not that of the United States. It is an affront to Türkiye's sovereignty for a part of the State to be prosecuted by a co-equal sovereign in that other sovereign's domestics courts.

6

## ARGUMENT

## I. HALKBANK IS A PART OF THE REPUBLIC OF TÜRKIYE, CREATED TO CARRY OUT TÜRKİYE'S SOVEREIGN FUNCTIONS.

### a. Halkbank was Created for the Purpose of Carrying Out the State's Constitutional Duties.

Halkbank is a state bank created *inter alia* for the specific purpose of fulfilling the State's economic duties to the public. Its name, which translates to "The People's Bank," reflects that purpose. Its public character and purpose are also codified in Turkish law. The Bank was created by the Republic of Türkiye under a 1933 law titled, "Halkbank and Public Funds Law" (Law No. 2284).

The Turkish Constitution assigns specific duties to the State which the Republic of Türkiye fulfills through Halkbank. Article 166 of the Turkish Constitution establishes as state duties, *inter alia*, ensuring "economic, social and cultural development, in particular the rapid, balanced and harmonious development of industry and agriculture throughout the country[,] the efficient use of national resources … increase [in] national savings and production, … stability in prices and

7

balance in external payments, [and] to promote investment and employment."

Similarly, Article 167, which focuses on markets supervision, obligates the state to "take measures to ensure and promote the sound and orderly functioning of the markets for money, credit, capital, goods and services."

Founded in the earliest days of the Republic, Halkbank has been fulfilling a portion of Türkiye's economic development duties assigned by its Constitution. The Bank's purpose is to carry out those duties and responsibilities so that money and capital markets can run in a healthy and balanced manner. Simply put, Halkbank was formed as, and remains today, an integral part of the Republic of Türkiye that acts in accordance with state purposes.

### b. Halkbank Carries Out Governmental Functions.

Halkbank engages in numerous purely governmental functions pursuant to statutes, presidential decrees, and decrees of the Council of Ministers.

8

Halkbank extends loans to shop owners and craftspeople, as a field of activity specially protected by the State, in accordance with the implementation procedures and principles specified by Presidential Decree (and by Council of Ministers' Decrees prior to July 9, 2018 when the Presidential System was adopted), subject to the appropriations provided in the annual Budgetary Law. These loans are offered at reduced interest rates. Halkbank further plays a large role in banking for this portion of the economy. For example, Halkbank alone is mandated by Turkish law to extend loans to Organized Industrial Zones and Small Industrial Areas of Türkiye using public funds. And, in 2017, the Turkish Government created a 250 billion lira credit guarantee fund at Halkbank for the purpose of increasing access to financing for small- and medium-sized enterprises.[2] This is in fulfillment of the Bank's decades-long practice of providing Treasury-backed loans to shop owners and craftspeople at subsidized rates. In 2019, the Government

---

[2] *See Turkish Government to Launch New Credit Guarantee Fund to Ease Tradespeople's Access to Financing*, Hürriyet Daily News, Feb. 6, 2017, www.hurriyetdailynews.com/turkish-govt-to-launch-new-credit-guarantee-fund-to-ease-tradespeoples-access-to-financing--109391.

announced that it would provide 22 billion Turkish liras in loans to 350,000 local businesses through Halkbank to help businesses retire debt.[3]  Similarly, during the Covid-19 pandemic, the Republic of Türkiye provided 27 billion Turkish lira in financing and made interest-free or low-interest credit cards available through Halkbank for millions of tradespeople.

Halkbank also engages in certain governmental functions limited by law to Türkiye's state banks.  Only state banks are empowered with the authority to collect certain taxes on behalf of the Turkish government.  For example, state banks function as the exclusive collectors of Turkish customs duties, which constitute over 20% of the government's tax income.  And only state banks offer state-sponsored financing to the public during states of emergencies, such as the Covid-19 pandemic, acts of terrorism, floods, and earthquakes.

---

[3] Ahmet Salih Alacaci, *Turkey: President Erdogan Announces New Social Support Measures*, Anadolu Agency, Aug. 1, 2019, www.aa.com.tr/en/economy/turkey-president-erdogan-announces-new-social-support-measures/1358899.

As the examples above demonstrate, Halkbank, as a state bank, has conducted sovereign duties for the Republic of Türkiye.

Every year, the Republic of Türkiye accounts for Halkbank's lending activities in its Annual Report submitted to the Securities Exchange Commission on Form 18-K. In so doing, Türkiye is treating the Bank's activities as its own, as a state institution. And more recently, in a section of the Report titled, "Foreign Policy and International Relations," the first item Türkiye has discussed with respect to U.S.-Turkish relations is updates on the prosecution of Halkbank. *See, e.g.*, Amendment Number 5 to Annual Report of Republic of Türkiye for FY 2021 (Apr. 5, 2023). Inclusion of this case in its reports underscores the sovereign nature of the Bank, as its prosecution interferes with relations between the United States and Türkiye.

Thus, Halkbank functions as part of the Republic of Türkiye, utilizing publicly owned assets to administer financial safety nets, with the aim of stabilizing and promoting the national economy and encouraging the diversification and depth of Türkiye's capital markets. It has been operating since its inception to carry out duties and

11

responsibilities assigned to the Republic of Türkiye by the Turkish Constitution. In other words, Halkbank fulfills constitutionally mandated responsibilities of the Turkish government.

### c. The Government of Türkiye Directly Controls and Oversees the Management of Halkbank.

The Government of Türkiye directly controls and manages Halkbank through multiple channels. Under Turkish law, the Bank is an affiliate of the Ministry of Treasury and Finance. The Minister of Treasury and Finance therefore has the authority to, and does, represent the Halkbank shares owned by Türkiye through the Türkiye Wealth Fund. Türkiye determines the Bank's management through its majority ownership of the Bank's shares. Pursuant to Halkbank's Articles of Association, Halkbank's nine-member Board of Directors is elected by its shareholders. *See* Halkbank Articles, art. 19.

Türkiye exercises additional means of control. Various government agencies conduct oversight through state audits that apply exclusively to public entities. According to the Turkish Constitution, Article 165, "public institutions and partnerships where more than half of the capital

directly or indirectly belongs to the State [shall be audited] by the Grand National Assembly of [Türkiye]." And Halkbank, unlike the audits conducted on other private banks in terms of shareholding, is subject to the scrutiny of the Grand National Assembly of Türkiye, which is carried out by the Turkish Court of Accounts. Halkbank is also subject to the Republic of Türkiye's Ombudsman. *See* Dr. Meliksah Yasin Decl. ¶¶ 2.5, 2.9, 3.1, *Owens v. Turkiye Halk Bankasi A.S.*, No. 20-cv-2648 (S.D.N.Y. Sept. 25, 2020), Dkt. 64 (describing the Bank's oversight structure).

Turkish law also permits the President of Türkiye to determine the procedures and principles for Halkbank's structure as long as it remains in public hands. *Id*. ¶ 2.4 (citing Law No. 4603). Thus, Halkbank is directly controlled and managed by the State.

### d. The Republic of Türkiye Directly Owns Halkbank.

As affirmed in the opening line of the Supreme Court's Opinion, Halkbank is "a bank owned by the Republic of Turk[iye]." *Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940, 943 (2023). Since Halkbank's incorporation, Türkiye has always owned a majority of Halkbank's shares. Today, over 91 percent of Halkbank's shares are

13

directly owned by Türkiye in the name of the Türkiye Wealth Fund (Türkiye Varlık Fonu) (the "Fund"). The Fund is not a separate corporation or legal entity, but only a portfolio for holding shares and other assets. Pursuant to Turkish Law No. 4603, the Ministry of Treasury and Finance holds the representative, administrative, management, and control powers of the shares. Thus, the privilege of casting votes during Halkbank's general assembly meetings is held by the Treasury and Finance Ministry.

Accordingly, Halkbank is an integral part of Türkiye, which owns and controls it. The bank acts in accordance with Türkiye's interests.

## II. HALKBANK CARRIED OUT SOVEREIGN STATE ACTIVITIES IN MANAGING THE ACCOUNTS HOLDING IRAN'S PROCEEDS OF OIL AND GAS SALES TO TÜRKİYE.

The allegations in the indictment make clear that the prosecution seeks to prosecute Halkbank for performing sovereign acts. The allegations arise out of bilateral, diplomatic agreement between the governments of the United States and Türkiye. Türkiye meets a majority of its energy needs through imports. One of its largest sources of energy has historically been its neighbor, Iran. The United States was

14

implementing a sanctions regime against Iran, to pressure Iran to negotiate a diplomatic nuclear agreement. As part of that effort, the United States was engaging with its allies and trading partners to limit their use of Iranian oil and gas. Türkiye was among the countries granted specific exceptions by the United States to engage in trade with Iran for a defined period so long as it would also be commit to reducing its purchases of Iranian oil. *See* Press Release, Dep't of State, Regarding Significant Reductions of Iranian Crude Oil Purchases (June 11, 2012). Regardless, Türkiye has stopped importing oil from Iran and has continued to diversify its energy imports, significantly importing gas from 12 different countries, including LNG from the United States.

Under the exceptions granted, it was determined by Türkiye that a state bank should facilitate the foreign trade transactions with Iran by intermediating the trade between Türkiye and Iran. Türkiye appointed Halkbank to play this role, which was vital to the country continuing to meet its energy needs. Indeed, Halkbank played numerous roles in Türkiye's oil and gas transactions with Iran, as the trades were partially financed with tax revenue collected by Halkbank and other state banks.

15

This case thus involves quintessential sovereign functions. *Accord Certain Iranian Assets (Iran v. U.S.)*, Judgment, 2023 I.C.J. Rep. 164, ¶ 50 (Mar. 30) (holding that the Central Bank of Iran's engagement in certain commercial activities did not alter the sovereign status of the bank because the bank's activities were "carried out within the framework and for the purposes of" the bank's sovereign function of managing Iran's currency reserves, not "alongside" that function).

Fundamentally, the indictment's allegations—which Türkiye and Halkbank dispute—are that Halkbank acted under the Turkish government's express direction. These alleged acts were sovereign in nature and taken at the sovereign's request and direction. Under any standard, Türkiye and Halkbank are immune for such acts.

## III. THE UNITED STATES SHOULD NOT PROSECUTE ORGANS OF A FOREIGN STATE.

Halkbank is an arm of the Republic of Türkiye. As the above sections explain, Türkiye created the Bank to function as an extension of itself.

The core functions and structure of Halkbank are designed so that

16

the State can best carry out its Constitutional duty of ensuring the economic development of the State, per Articles 166 and 167 of the Turkish Constitution. The United States and Türkiye may differ in whether the state should own banks that perform domestic banking functions, or whether a bank should both perform commercial banking for the public and collect taxes or distribute disaster relief. Even so, the United States has created several banking instrumentalities for international services, ranging from the Export-Import Bank, which funds overseas projects and engages in "general banking business," 12 U.S.C. § 635(a)(1), to the U.S. International Development Finance Corporation, which "facilitate[s] the participation of private sector capital and skills in the economic development of less developed countries," 22 U.S.C. § 9612(b).

But the difference in how the United States and Türkiye organize their governments does not change Halkbank's status as a state institution of Türkiye: Halkbank was created by the State for the national purpose of ensuring the economic development of the State; the State actively supervises the Bank; the Bank's board is controlled by the

17

Turkish Ministry of Treasury and Finance; the Bank is owned by the State; and, the Bank holds exclusive rights to carry out sovereign functions overseen and funded by the Ministry of Treasury and Finance. *See Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004) (describing factors relevant to a foreign entity's status as an "organ" of a state under 28 U.S.C. § 1603(b)(2)).

Indeed, public banks, many similar to Halkbank, are a common feature around the globe. France operates a public bank through its postal service, La Banque Postale, as does Japan, the Japan Post Bank. Germany operates a network of public community banks, the Sparkasse. In Canada, the largest public bank in North America, ATB Financial, is owned and operated entirely by the provincial government of Alberta. India's largest bank of any kind is the State Bank of India. In Italy, the Cassa Depositi e Prestiti carries out roles similar to those of Halkbank in Türkiye.

The United States and its courts may not challenge or second-guess how a foreign state chooses to organize itself. Should the United States (or this Court) allow a prosecution of the United Kingdom's National

18

Health Service because healthcare is privatized in the United States? Or would it be acceptable for the courts of the United Kingdom to allow a prosecution of the U.S. Postal Service because mail services in that country are not run by the state? International law is grounded in the fundamental notion that a state's internal functioning is at the complete discretion of the home government. Black's Law Dictionary 1396 (6th ed. 1990) (defining "sovereignty" to mean the "international independence of a state," "combined with the right and power of regulating its internal affairs without foreign dictation"). The principle of the right to self-organization and non-intervention is embodied in Article 2(7) of the U.N. Charter, which does not authorize the U.N. to intervene in the domestic matters of a state. U.N. Charter art. 2, ¶ 7 (stating that "nothing contained in the present Charter shall authorize the United Nations to intervene in matters which are essentially within the domestic jurisdiction of any state"). This means that Türkiye, and not any other nation, is alone entitled to determine which entities form a part of its state. *See* Restatement (Third) of Foreign Relations Law pt. IV, ch. 1, introductory note (1987) ("International law has long recognized

limitations on the authority of states to exercise jurisdiction to prescribe in circumstances affecting the interests of other states."); Restatement (Second) of Foreign Relations Law § 8 (1965) ("Action by a state in prescribing or enforcing a rule that it does not have jurisdiction to prescribe or jurisdiction to enforce, is a violation of international law . . . .").

It also means that the United States is seeking to prosecute a part of the Republic of Türkiye for actions taken in Türkiye under the sovereign authority of the State. At the foundation of United States law on sovereign immunity is the principle that "[t]he jurisdiction of the nation within its own territory is necessarily exclusive and absolute. It is susceptible of no limitation not imposed by itself." *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812). But the United States government asserts that it can prosecute a part of the Republic of Türkiye for alleged actions taken in Türkiye, not the United States. *See United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 349 (2d Cir. 2021) (describing "Halkbank's [alleged] participation in schemes to launder Iranian oil and gas proceeds through non-U.S.

20

transactions" as occurring outside the United States). Halkbank does not maintain any branches or representative offices in the United States. And none of the alleged transactions in which Halkbank participated involved U.S. Dollars or U.S. Banks.

The right to undertake such a prosecution runs contrary to the "longstanding principle of American law" that U.S. law is generally "meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 255 (2010). The presumption against extraterritorial application "serves to protect against unintended clashes between [U.S.] laws and those of other nations which could result in international discord." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013).

This principle applies with particular force in the context of a prosecution of a Republic of Türkiye entity for alleged actions occurring within Türkiye. Whether or not extraterritoriality issues should prevent the prosecution of Turkish citizens for actions taken in Türkiye, targeting an arm of the State presents clear sovereign immunity problems. These problems are all the more acute given that the case involves "an alleged

21

fraudulent scheme orchestrated primarily in [Türkiye]," and thus "relevant documentary evidence is … stored in [Türkiye] and written in Turkish." *Owens v. Turkiye Halk Bankasi, AS*, No. 20-cv-2648, 2021 WL 638975, at *4 (S.D.N.Y. Feb. 16, 2021), *aff'd*, 2023 WL 3184617 (2d Cir. May 2, 2023). Indeed, a major source of documents in the government's case is a police file stolen from Türkiye and illegally brought to the United States.

The prosecution of Halkbank by a coequal sovereign, especially for actions undertaken by Halkbank within the bounds of Türkiye's sovereignty, is a demeaning move against Türkiye's dignity. Türkiye does not presume to be subject to criminal prosecution in the domestic courts of any other state, including the United States. Under the principle of sovereign equality, Türkiye expects other states, including the United States, to abide by the bedrock principle of state immunity from criminal prosecution. Hazel Fox & Philippa Webb, The Law of State Immunity 92 (3d ed. 2013) (observing that the adoption of the restrictive theory of sovereign immunity internationally "has not been treated as

22

having any relevance in relation to the [a]bsolute [i]mmunity of the foreign State from criminal proceedings").

Since its founding, the United States, in line with international legal precedent, has never criminally tried a foreign sovereign or one of its instrumentalities. Even in the United States, an entity that functions as an "arm of the state" is entitled to Eleventh Amendment immunity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). That determination often turns on the question of whether a decision against an entity amounts to a decision against the state itself. *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 400-01 (1979). And federally owned corporations receive sovereign immunity absent waiver by the government. *See Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1442 (2019). Türkiye declines to waive Halkbank's immunity.

## IV. THE PROSECUTION OF HALKBANK OFFENDS INTERNATIONAL COMITY.

Turkish law does not permit a foreign state or instrumentality to be criminally prosecuted in its courts. Current Turkish law would not

23

permit the Republic of Türkiye to criminally prosecute a U.S. government entity in its courts.  This is a principle adopted by practices of other nations as well as international law.

The U.S. Supreme Court has, in a case constraining the application of U.S. antitrust laws to U.S. territory, warned that treating a foreign party "according to [U.S.] notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent." *Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347, 356 (1909).  Later, in *Hartford Fire Insurance Co. v. California*, the Court referred to "the principle of international comity" as a reason to deny jurisdiction if the conduct prohibited by U.S. law was mandatory in another state.  509 U.S. 764, 797, 799 (1993) (discussing the hypothetical situation of British law requiring a party to act in a manner prohibited by U.S. law).  Here, Halkbank, an arm of the Republic of Türkiye, has carried out actions required of it by constitutional authority and state direction.  If these actions allegedly ran afoul of U.S. law, then international comity

24

demands that this conflict be resolved through traditional means between co-equal sovereigns, rather than through one state attempting to subject the other to its domestic tribunals. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004); *see also Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 130 (2005) (Kennedy, J.) (referring to "international comity" to limit interference with internal affairs of foreign-flag ship); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 761 (2004) (Breyer, J., concurring in part and concurring in the judgment) (referring to "notions of comity that lead each nation to respect the sovereign rights of other nations by limiting the reach of its laws and their enforcement").

## CONCLUSION

The Republic of Türkiye does not consent to the jurisdiction of the court below over its Bank. It respectfully urges the Court to preserve the absolute immunity of Halkbank, which is a part of the Republic of Türkiye, and order the court below to abstain from asserting jurisdiction.

Respectfully submitted,

/s/ *David S. Saltzman*
DAVID S. SALTZMAN, ESQ.
*Counsel of Record*
SALTZMAN & EVINCH, PLLC
1310 19th St NW
Washington, D.C. 20036
Telephone: (202) 372-0092
Telefax: (202) 318-0892
dsaltzman@saltzmanevinch.com

*Counsel for Amicus Curiae Republic of Türkiye*

July 31, 2023

26

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, David S. Saltzman, counsel for amicus Republic of Türkiye and a member of this Court's Bar, certify, pursuant to Federal Rules of Appellate Procedure 29(a)(4)-(5) and 32(g)(1), that the foregoing brief is proportionally spaced, has a typeface of 14 points or larger, and contains 4449 words.

July 31, 2023                          /s/ *David S. Saltzman*
                                       David S. Saltzman

27

## CERTIFICATE OF SERVICE

I, David S. Saltzman, counsel for amicus Republic of Türkiye and a member of this Court's Bar, certify that, on July 31, 2023, a copy of the attached amicus brief was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all the parties required to be served have been served. I further certify that copies of the amicus brief will be sent, via third-party commercial carrier, to the Clerk and to the following counsel:

> Michael Dennis Lockard
> United States Attorney's Office
> Southern District of New York
> One St. Andrew's Plaza
> New York, NY 10007

> /s/ *David S. Saltzman*
> David S. Saltzman