# 20-3499

## In the United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA, *Appellee*,

*v.*

REZA ZARRAB, AKA RIZA SARRAF, CAMELIA JAMSHIDY, AKA KAMELIA JAMSHIDY, HOSSEIN NAJAFZADEH, MOHAMMAD ZARRAB, AKA CAN SARRAF, AKA KARTALMSD, MEHMET HAKAN ATILLA, MEHMET ZAFER CAGLAYAN, ABI, SULEYMAN ASLAN, LEVENT BALKAN, ABDULLAH HAPPANI, *Defendants*,

TÜRKIYE HALK BANKASI A.S., AKA HALKBANK, *Defendant-Appellant.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, NO. 1:15-CR-867-10 (THE HONORABLE RICHARD M. BERMAN)*

*ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES*

**BRIEF OF *AMICUS CURIAE* PROFESSOR ROGER O'KEEFE IN SUPPORT OF DEFENDANT-APPELLANT**

Christopher J. Paolella
REICH & PAOLELLA LLP
111 Broadway, Suite 2002
New York, New York 10006
(212) 804-7090
cpaolella@reichpaolella.com
*Counsel for* Amicus Curiae
*Professor Roger O'Keefe*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE .................................................................... 1

SUMMARY OF ARGUMENT ...................................................................... 2

ARGUMENT ................................................................................................ 5

I.   Foreign States Enjoy Absolute Immunity from Criminal
     Jurisdiction ........................................................................................ 5

II.  Foreign State Instrumentalities Enjoy Absolute Immunity
     from Criminal Jurisdiction When They Act in the Exercise
     of State Authority ........................................................................... 10

III. On the Facts Alleged, Halkbank Is Immune from Criminal
     Jurisdiction ...................................................................................... 16

CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**United States Cases:**

*Jam v. Int'l Fin. Corp.*,
139 S. Ct. 759 (2019) ........................................................ 9

*The Schooner Exchange v. McFaddon*,
11 U.S. (7 Cranch) 116 (1812) ....................................... 5

*Türkiye Halk Bankasi A.S. v. United States*,
143 S. Ct. 940 (2023) ...................................................... 2


**Foreign and International Cases:**

*Adamov v. Federal Office of Justice*,
Case No. 1A 288/2005 (Swi. Fed. Sup. Ct. Dec. 22, 2005) .......................... 8

*Almås and Almås v. Republic of Poland*,
P.C.A. Case No. 2015-13 (Perm. Ct. Arb. Jun. 27, 2016) ....................... 14

*Agent judiciare du Trésor v. Malta Maritime Authority and
Carmel X*, Cass. crim., Nov. 23, 2004, Bull. crim.,
No. 04-84.265 (Fr.) ....................................................... 12

*Al-Adsani v. United Kingdom*,
34 EHRR 11 (2001) ......................................................... 6

*Al-Malki v. Reyes*,
[2017] UKSC 61, [2019] AC 735 (H.L. Oct. 18, 2017)
(appeal taken from Eng.) .............................................. 5

*Jurisdictional Immunities of the State (Ger. v. It.: Greece Intervening)*,
2012 I.C.J. 99 (Feb. 3) ............................................... 5, 6

*The "Enrica Lexie" Incident (It. v. Ind.)*,
P.C.A. Case No. 2015-28 (Perm. Ct. Arb. May 21, 2020) ....................... 7

*Estate of Jean-Baptiste Caire (France) v. United Mexican States*,
    5 R.I.A.A. 516 (June 7, 1929) ............................................................ 16

*Gustav F.W. Hamester GmbH. & Co. K.G. v. Republic of Ghana*,
    ICSID Case No. ARB/07/24 (Jun. 18, 2010) .............................. 14

*Jones v. Ministry of Interior of the Kingdom of Saudi Arabia*,
    [2006] UKHL 26, [2007] 1 AC 270, ¶¶12, 74-79 (H.L.
    Jun. 14, 2006) (appeal taken from Eng.) ...................................... 14

*Lozano (Mario Luiz) v. Italy*,
    Case No 31171/2008, ¶5 (It. Ct. of Cass. sez. I pen. Jul. 24, 2008) ........... 8

*Minister of Justice and Constitutional Development v. Southern
    African Litigation Centre*, [2016] ZASCA 17, ¶66 (S. Afr.
    Sup. Ct. of App. Mar. 15, 2016) ..................................................... 8

*Prosecutor v. Blaškić*,
    Case No. IT-95-14, Judgment on the Request of the
    Republic of Croatia for Review of the Decision of Trial
    Chamber II of 18 July 1997, ¶41 (Int'l Crim. Trib. for the
    former Yugoslavia Oct. 29, 1997) ................................................. 7

*Regina v. Bow St. Metro. Stipendiary Magistrate, ex parte
    Pinochet Ugarte (No. 3)*, [2000] 1 A.C. 147 (H.L. Mar. 24,
    1999) (appeal taken from Eng.) ..................................................... 8

**United States Statutes:**

22 U.S.C. § 8513a .................................................................................... 17

**Foreign and International Statutes, Conventions, and Resolutions:**

Act on Civil Jurisdiction over Foreign States of 2009, Act No. 24
of 24 April 2009 (Japan)............................................................... 9, 10

Foreign States Immunities Act of 1981, Act 87 of 1981
(South Africa)........................................................................ 9

Foreign States Immunities Act of 1985, No. 19, 1985
(Australia)............................................................................ 9

Foreign States Immunity Law of 2008 (Israel) .................................... 9

G.A. Res. 56/83, annex, Responsibility of States for Internationally
Wrongful Acts (Dec. 12, 2001)................................................ 14, 15

G.A. Res. 59/38 (Dec. 2, 2004) ...................................................... 9

G.A. Res. 59/38, annex, United Nations Convention on
Jurisdictional Immunities of States and Their Property
(Dec. 16, 2004) ................................................................5, 6, 12, 13

Immunities and Privileges Act of 1984, Act No. 12 of 1984
(Malawi)................................................................................ 9

Rome Statute of the International Criminal Court, Jul. 17,
1998, 2187 U.N.T.S. 90.......................................................... 7

State Immunity Act of 1978, c. 33 of 1978 (United Kingdom)............... 9

State Immunity Act of 1985, R.S.C. 1985, C. S-18 (Canada).............. 9

State Immunity Act of 1985, Cap. 313 (Singapore)........................... 9

State Immunity Ordinance of 1981, Ordinance No. 6 of 1981
(Pakistan).............................................................................. 9

**Other Sources:**

Zachary Douglas, *State Immunity for the Acts of State Officials*,
    82 Brit. Y.B. Int. L. 281 (2011) ...................................................................... 8

Joanne Foakes, *The Position of Heads of State and Senior*
    *Officials in International Law* (2014).......................................................... 8

Hazel Fox & Philippa Webb, *The Law of State Immunity*
    (3d ed. 2015)............................................................................................ 9

International Law Commission, Immunity of State Officials
    from Foreign Criminal Jurisdiction: Memorandum by the
    Secretariat, U.N. Doc. A/CN.4/596 (Mar. 31, 2008) .................................. 8

International Law Commission, Report of the International
    Law Commission on the Work of Its Forty-Third Session,
    [1991] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/1991/
    Add.1 (Part 2) ...................................................................................... 13

International Law Commission, Report of the International
    Law Commission on the Work of Its Fifty-Third Session,
    [2001] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/2001 ............ 15

International Law Commission, Report of the International
    Law Commission on the Work of Its Sixty-Ninth Session,
    [2017] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/2017/
    Add.1 (Part 2) ...................................................................................... 10

International Law Commission, Report of the Work of Its
    Seventy-Third Session, U.N. Doc. A/77/10 (2022) ......................... 7, 10, 14

Bing Bing Jia, *The Immunity of State Officials for International*
    *Crimes Revisited*, 10 J. Int'l Crim. Just. 1303 (2012) ............................. 8

V.S. Khanna, *Corporate Criminal Liability: What Purpose*
    *Does It Serve?*, 109 Harv. L. Rev. 1477, 1491 (1996)............................ 11

Roman Kolodkin (Special Rapporteur), Second Rep. on Immunity of State Officials from Foreign Criminal Jurisdiction, U.N. Doc. A/CN.4/631 (Jun. 10, 2010) ..................................................... 8

Campbell McLachlan, Pinochet *Revisited*, 51 Int. & Comp. L.Q. 959 (2002) ......................................................................................... 8

Sean D. Murphy, *Immunity* Ratione Materiae *of State Officials from Foreign Criminal Jurisdiction: Where is the State Practice in Support of Exceptions?*, 118 Am. J. Int'l L. Unbound (2018)................................................................................. 10

2 Marian Nash, *Cumulative Digest of United States Practice in International Law, 1981–1988* (1994)................................... 8

Restatement (Fourth) of Foreign Relations Law (2018) ................................ 5, 7

Roger O'Keefe & Christian J. Tams (eds.), *The United Nations Convention on Jurisdictional Immunities of States and Their Property: A Commentary* (2013)......................................... 1

Roger O'Keefe, *International Criminal Law* (2015)..................................... 1, 10

U.N. Doc. A/C.6/66/SR.26 (Dec. 7, 2011)............................................... 14

U.N. Doc. A/C.6/66/SR.27 (Dec. 8, 2011)............................................... 14

U.N. Doc. A/C.6/67/SR.20 (Dec. 7, 2012)............................................... 14

U.N. Doc. A/C.6/67/SR.21 (Dec. 4, 2012)............................................... 14

U.N. Doc. A/C.6/67/SR.22 (Dec. 4, 2012)............................................... 14

U.N. Doc. A/C.6/68/SR.17 (Oct. 28, 2013) ............................................ 8

U.N. Doc. A/C.6/71/SR.27 (Dec. 5, 2016)............................................... 8

U.N. Doc. A/C.6/71/SR.29 (Dec. 2, 2016)............................................... 8

U.N. Doc. A/C.6/72/SR.22 (Nov. 27, 2017) .............................................. 8

Ingrid Wuerth, Pinochet*'s Legacy Reassessed*, 106 Am. J. Int. L.
732 (2012) ........................................................................................ 8

Xiaodong Yang, *State Immunity in International Law* (2012)......................... 8

## INTEREST OF *AMICUS CURIAE* [1]

Roger O'Keefe is Professor of International Law at Bocconi University, Milan, and an honorary Professor of Laws at University College London. Professor O'Keefe's extensive publications in the field of international law include *The United Nations Convention on Jurisdictional Immunities of States and Their Property: A Commentary* (2013), which he co-edited with Professor Christian J. Tams and to which he contributed thirteen chapters as author or co-author; and *International Criminal Law* (2015), a leading treatise that includes an extensive treatment of the international law of jurisdictional immunity from criminal proceedings. He has been consulted by governments and international organizations and has appeared as *amicus curiae* before the Appeals Chamber of the International Criminal Court on questions of jurisdictional immunity.

Professor O'Keefe filed an *amicus* brief in the United States Supreme Court in this case. He has a particular interest in this case given his expertise in, and this case's implications for, the international law of state immunity.

---

[1] No counsel for a party authored this brief in whole or in part. No one other than *amicus curiae* and *amicus's* counsel made a monetary contribution intended to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

This brief addresses the customary international law governing whether an agency or instrumentality of one state (the "foreign state") may be subjected to criminal proceedings in the courts of another state (the "forum state"). It assumes, based on the record before this Court, that Appellant Türkiye Halk Bankasi A.S. ("Halkbank") is a state instrumentality of the Republic of Turkey and that Turkey has not consented to the exercise of jurisdiction over Halkbank.

The customary international law of state immunity is highly relevant to this case. The Supreme Court held that the Foreign Sovereign Immunities Act does not grant immunity to instrumentalities of foreign states in criminal proceedings. *Türkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940, 946 (2023), A.267. But it concluded that the "Court of Appeals did not fully consider" the parties' "arguments regarding common-law immunity," and remanded for this Court to consider those issues. *Id.* at 951, A.281. Consequently, key questions before this Court are whether and how "to make the immunity decision looking to customary international law." *Id.* at 954, A.288 (Gorsuch, J., concurring in part and dissenting in part).

As to those questions, this brief makes three principal points.

*First*, under customary international law, a foreign state enjoys absolute immunity from the criminal jurisdiction of a forum state. The customary international law of state immunity prohibits a forum state from exercising judicial jurisdiction over a foreign state, unless and to the extent that the foreign state has consented to this or an exception to immunity applies under international law. This prohibition protects not just the foreign state named as such but also, among others, its agencies and instrumentalities and its officials. State immunity applies in relation to both civil and criminal jurisdiction. State immunity from criminal jurisdiction differs from state immunity from civil jurisdiction only in terms of the exceptions to that immunity. Whereas there are well-established exceptions under customary international law to state immunity from civil proceedings, state immunity from criminal proceedings is subject to no exceptions.

*Second*, under customary international law, a foreign state instrumentality enjoys absolute immunity from the criminal jurisdiction of a forum state when it acts in the exercise of state authority, as opposed to in a private capacity. This conclusion is supported by the judgment of the highest appellate court of the only other state to have addressed the issue, namely the

Criminal Chamber of the French Court of Cassation. It is further supported by the customary international legal definition of a "state" applicable in the civil context, as well as by the customary international law of state responsibility. The latter suggests too that it is immaterial whether the instrumentality is alleged to have acted illegally or beyond the scope of the powers conferred on it, save where the acts in question bear no relationship whatsoever to its official function.

*Third*, on the facts alleged in the indictment, Halkbank enjoys state immunity under customary international law from the criminal jurisdiction of U.S. courts regarding its alleged criminal activities. In respect of these alleged activities, Halkbank was acting in the exercise of the state authority of Turkey, rather than in a private capacity. It is not the case that Halkbank's alleged activities bore no relationship to its official function. To the contrary, they took the form of the very exercise of the state authority with which Halkbank had been empowered.

# ARGUMENT

## I. Foreign States Enjoy Absolute Immunity from Criminal Jurisdiction.

The customary international law of state immunity prohibits a forum state from exercising judicial jurisdiction over a foreign state, unless and to the extent that the foreign state has consented to this or an exception to immunity applies under international law. *See*, *e.g.*, Restatement (Fourth) of Foreign Relations Law § 451 (2018) ("Under international law and the law of the United States, a state is immune from the jurisdiction of the courts of another state, subject to certain exceptions."); *Jurisdictional Immunities of the State (Ger. v. It.: Greece Intervening)*, 2012 I.C.J. 99, 123-4 (Feb. 3) ("*Jurisdictional Immunities*"); G.A. Res. 59/38, annex, United Nations Convention on Jurisdictional Immunities of States and Their Property, at 3 (art. 5) (Dec. 16, 2004) ("United Nations Convention on State Immunity").[2]

The customary international law of state immunity is founded on the "equality and absolute independence of sovereigns." *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 137 (1812); *see, e.g., Jurisdictional*

---

[2] The Convention, while not in force, "is generally regarded as an authoritative statement of customary international law on the major points which it covers." *Al-Malki v. Reyes*, [2017] UKSC 61, [2019] AC 735, ¶27 (H.L. Oct. 18, 2017) (appeal taken from Eng.); *see Jurisdictional Immunities*, 2012 I.C.J. at 128.

*Immunities*, 2012 I.C.J. at 123. A forum state's non-consensual exercise of judicial power over a foreign state would run counter to "the principle *par in parem non habet imperium*" ("An equal has no authority over an equal"), "by virtue of which one State shall not be subject to the jurisdiction of another State." *Al-Adsani v. United Kingdom*, 34 EHRR 11, ¶54 (2001).

As a matter of international law, a state is a unitary entity with a single juridical personality. As a matter of domestic law, in contrast, the state is composed of a variety of distinct juridical persons, including state agencies and instrumentalities and state officials. Each of these domestic juridical persons, whether legal or natural, is capable of being regarded under international law as the foreign state for the purposes of state immunity. *See, e.g.,* United Nations Convention on State Immunity art. 2(1)(*b*) (" 'State' means: (i) the State and its various organs of government; (ii) constituent units of a federal State or political subdivisions of the State, which are entitled to perform acts in the exercise of sovereign authority, and are acting in that capacity; (iii) agencies or instrumentalities of the State or other entities, to the extent that they are entitled to perform and are actually performing acts in the exercise of sovereign authority of the State; [and] (iv) representatives of the State

acting in that capacity . . . ."); Restatement (Fourth) of Foreign Relations Law §§ 451 n.1, 452 (2018).

A foreign state is immune under customary international law from both the civil and the criminal jurisdiction of a forum state. A forum state's non-consensual exercise of judicial power over a foreign state represents a violation of the sovereign equality of the foreign state whether that judicial power pertains to civil or criminal proceedings.

So, under customary international law, current and former foreign state officials enjoy immunity from the criminal jurisdiction of a forum state in respect of "acts performed in an official capacity," as opposed to in a private capacity. International Law Commission, Report of the Work of Its Seventy-Third Session, U.N. Doc. A/77/10, at 190 (art. 6(1)) (2022); *The "Enrica Lexie" Incident (It. v. Ind.)*, P.C.A. Case No. 2015-28, ¶843 (Perm. Ct. Arb. May 21, 2020); *see Prosecutor v. Blaškić,* Case No. IT-95-14, Judgment on the Request of the Republic of Croatia for Review of the Decision of Trial Chamber II of 18 July 1997, ¶41 (Int'l Crim. Trib. for the former Yugoslavia Oct. 29, 1997); Rome Statute of the International Criminal Court art. 98(1), Jul. 17, 1998, 2187 U.N.T.S. 90, 148 (referring to "the State . . . immunity of a person . . . of a third

State"). This immunity is a manifestation of State immunity. This view is widely shared by States, including the United States,[3] and scholars.[4]

State immunity from criminal jurisdiction differs from state immunity from civil jurisdiction in that it is absolute, meaning that it is subject to no

---

[3] *See, e.g.*, U.S. Statement of Interest, *Chuidian v. Philippine Nat'l Bank*, No. CV 86-2255 (C.D. Cal. Mar. 21, 1988) ("[A]n official should be shielded from personal liability for the performance of official functions."), *reprinted in* 2 Marian Nash, *Cumulative Digest of United States Practice in International Law, 1981–1988* (1994), at 1581, 1582; *Minister of Justice and Constitutional Development v. Southern African Litigation Centre*, [2016] ZASCA 17, ¶66 (S. Afr. Sup. Ct. App. Mar. 15, 2016); *Lozano (Mario Luiz) v. Italy*, Case No 31171/2008, ¶5 (It. Ct. of Cass. sez. I pen. Jul. 24, 2008); *Adamov v. Federal Office of Justice*, Case No. 1A 288/2005, ¶3.4.2 (Swi. Fed. Sup. Ct. Dec. 22, 2005); *Regina v. Bow St. Metro. Stipendiary Magistrate, ex parte Pinochet Ugarte (No. 3)*, [2000] 1 A.C. 147 (H.L. Mar. 24, 1999) (appeal taken from Eng.); U.N. Doc. A/C.6/72/SR.22 (Nov. 27, 2017), ¶97 (Australia); U.N. Doc. A/C.6/71/SR.27 (Dec. 5, 2016), ¶123 (Czech Republic); U.N. Doc. A/C.6/71/SR.29 (Dec. 2, 2016), ¶7 (Netherlands); U.N. Doc. A/C.6/68/SR.17 (Oct. 28, 2013), ¶34 (Norway, on behalf of the Nordic countries).

[4] *See, e.g.*, Joanne Foakes, *The Position of Heads of State and Senior Officials in International Law* 10 (2014); Xiaodong Yang, *State Immunity in International Law* 426–27 (2012); Bing Bing Jia, *The Immunity of State Officials for International Crimes Revisited*, 10 J. Int'l Crim. Just. 1303, 1304–07 (2012); Ingrid Wuerth, *Pinochet's Legacy Reassessed*, 106 Am. J. Int. L. 731, 732 (2012); Zachary Douglas, *State Immunity for the Acts of State Officials*, 82 Brit. Y.B. Int. L. 281, 287 (2011); Campbell McLachlan, Pinochet *Revisited*, 51 Int. & Comp. L.Q. 959, 961–63 (2002); *see also* International Law Commission, Immunity of State Officials from Foreign Criminal Jurisdiction: Memorandum by the Secretariat, U.N. Doc. A/CN.4/596 (Mar. 31, 2008), ¶¶154–212; Roman Kolodkin (Special Rapporteur), Second Rep. on Immunity of State Officials from Foreign Criminal Jurisdiction, U.N. Doc. A/CN.4/631 (Jun. 10, 2010), ¶34.

exceptions. In the context of civil jurisdiction, under what is known as the restrictive doctrine of state immunity, foreign states "are entitled to immunity only with respect to their sovereign acts, not with respect to commercial acts." *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 766 (2019). But the restrictive doctrine applicable to civil jurisdiction leaves "untouched" absolute state immunity from criminal jurisdiction. Hazel Fox & Philippa Webb, *The Law of State Immunity* 91 (3d ed. 2015). There is a "general understanding" among states that the United Nations Convention on State Immunity, which enumerates exceptions with respect to commercial acts, "does not cover criminal proceedings." G.A. Res. 59/38, ¶2 (Dec. 2, 2004). Likewise, the state immunity legislation of other states recognizes commercial exceptions in relation to civil but not criminal proceedings.[5]

---

[5] *See* State Immunity Act of 1978, c. 33 of 1978, § 16(4) (United Kingdom); Foreign States Immunities Act of 1981, Act 87 of 1981, § 2(3) (South Africa); State Immunity Ordinance of 1981, Ordinance No. 6 of 1981, § 17(2)(b) (Pakistan); Immunities and Privileges Act of 1984, Act No. 12 of 1984, § 18(2) (Malawi); Foreign States Immunities Act of 1985, No. 19, 1985, § 3(1), definition of "proceeding" (Australia); State Immunity Act of 1985, R.S.C. 1985, C. S-18, § 18 (Canada); State Immunity Act of 1985, Cap. 313, § 19(2)(b) (Singapore); Foreign States Immunity Law of 2008, §§ 2–3, 15(c) (Israel); Act on Civil Jurisdiction over Foreign States of 2009, Act No. 24 of 24 April 2009, §§ 1–2 (Japan).

There is admittedly debate over whether state immunity from criminal jurisdiction extends to international crimes like genocide, crimes against humanity, and war crimes.[6] The more accurate view is that customary international law recognizes no exception in this regard. *See* Roger O'Keefe, *International Criminal Law* 437–53 (2015); Sean D. Murphy, *Immunity Ratione Materiae of State Officials from Foreign Criminal Jurisdiction: Where is the State Practice in Support of Exceptions?*, 118 Am. J. Int'l L. Unbound at 4–8 (2018). But the debate merely underscores that the restrictive theory's exceptions for commercial acts do not apply in the criminal context.

In sum, a foreign state is immune under customary international law from the criminal jurisdiction of a forum state in respect of all of its acts, unless and to the extent that it consents to the exercise of jurisdiction.

## II. Foreign State Instrumentalities Enjoy Absolute Immunity from Criminal Jurisdiction When They Act in the Exercise of State Authority.

Agencies and instrumentalities of a foreign state enjoy under customary international law the foreign state's absolute immunity from the criminal

---

[6] *See, e.g.,* International Law Commission, Report of the International Law Commission on the Work of Its Sixty-Ninth Session, [2017] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/2017/Add.1 (Part 2), ¶¶71 n.371, 74. *But see id.* ¶¶91–115; International Law Commission, Rep. of the Work of Its Seventy-Third Sess., U.N. Doc. A/77/10, ¶¶230–36 (2022).

jurisdiction of a forum state when they act in the exercise of state authority, as opposed to in a private capacity. The consideration of state immunity from criminal jurisdiction highlighted in the previous section admittedly arose in the context of criminal proceedings against the current or former officials of foreign states, not against those states' agencies or instrumentalities. But this is for the simple, contingent reason that most forum states recognize the criminal responsibility of natural persons only. They do not provide for the criminal responsibility of "legal persons" like private corporations or state agencies and instrumentalities. *See*, *e.g.*, V.S. Khanna, *Corporate Criminal Liability: What Purpose Does It Serve?*, 109 Harv. L. Rev. 1477, 1491 (1996) ("[C]orporate criminal liability in Europe is generally more restrictive than in the United States.").

Just as with natural persons who are foreign state officials, international law requires those forum states that provide for the prosecution of legal persons to respect the state immunity from criminal jurisdiction enjoyed by foreign state agencies and instrumentalities. The sole relevant question for these purposes is whether the agency or instrumentality counts under international law as the foreign state in respect of the acts that are the subject of the proceedings.

The only other national court worldwide to address the issue has held that foreign state agencies and instrumentalities enjoy state immunity from criminal jurisdiction when they act in the exercise of state authority. According to the Criminal Chamber of the French Court of Cassation, "the rule of customary international law which bars proceedings against States before the criminal courts of a foreign State extends to organs and entities that constitute emanations of the State, as well as to their agents, by reason of acts which, as on the facts of the present case, relate to the sovereignty of the State concerned." *Agent judiciare du Trésor v. Malta Maritime Authority and Carmel X*, Cass. [Cour de Cassation] [supreme court for judicial matters] crim., Nov. 23, 2004, Bull. crim., No. 04-84.265 (Fr.).[7] In that case, the Malta Maritime Authority, a corporation created and owned by the state of Malta, was accorded the immunity from the jurisdiction of the French criminal courts to which the state of Malta was entitled under customary international law.

In the civil context, the United Nations Convention on State Immunity indicates that foreign state agencies and instrumentalities count as the foreign

---

[7] The translation is Professor O'Keefe's. The original French text reads: "la coutume internationale qui s'oppose à la poursuite des Etats devant les juridictions pénales d'un Etat étranger s'étend aux organes et entités qui constituent l'émanation de l'Etat ainsi qu'à leurs agents en raison d'actes qui, comme en l'espèce, relèvent de la souveraineté de l'Etat concerné."

state for the purposes of state immunity when they act in the exercise of state authority. Article 2(1)(*b*) of the Convention defines "State" to include "agencies or instrumentalities of the State or other entities, to the extent that they are entitled to perform and are actually performing acts in the exercise of sovereign authority of the State." *Id.* art. 2(1)(*b*)(iii); *see*, *e.g.*, International Law Commission, Report of the International Law Commission on the Work of Its Forty-Third Session, [1991] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/1991/Add.1 (Part 2), at 17 (offering, as "[e]xamples," "the practice of certain commercial banks which are entrusted by a Government to deal also with import and export licensing which is exclusively within governmental powers"). There is no cogent reason why the definition of a "state" for the purposes of state immunity from civil jurisdiction should differ from the definition of a "state" for the purposes of state immunity from criminal jurisdiction. The exceptions to state immunity in the civil context are irrelevant to this logically prior question.

Consideration of the customary international law of state responsibility further suggests that foreign state agencies and instrumentalities count as the foreign state for the purposes of state immunity from criminal jurisdiction when they act in the exercise of state authority. In principle, a state entity will

count as the "state" for the purposes of state immunity when its conduct can be considered an act of that state under the international law of state responsibility. *See, e.g., Jones v. Ministry of Interior of the Kingdom of Saudi Arabia* [2006] UKHL 26, [2007] 1 AC 270, ¶¶12, 74–79 (H.L. Jun. 14, 2006) (appeal taken from Eng.); International Law Commission, Rep. of the Work of Its Seventy-Third Session, U.N. Doc. A/77/10, at 209, 211 (2022).[8] Under the law of state responsibility, "[t]he conduct of a person or entity which is not an organ of the State . . . but which is empowered by the law of that State to exercise elements of the governmental authority shall be considered an act of the State under international law, provided the person or entity is acting in that capacity in the particular instance." G.A. Res. 56/83, annex, Responsibility of States for Internationally Wrongful Acts, Dec. 12, 2001, at 3 (art. 5).[9]

---

[8] *See also* U.N. Doc. A/C.6/66/SR.26, ¶8 (Dec. 7, 2011) (Norway, on behalf of the Nordic countries); U.N. Doc. A/C.6/66/SR.27, ¶71 (Dec. 8, 2011) (Portugal); U.N. Doc. A/C.6/67/SR.20, ¶111 (Dec. 7, 2012) (Austria); U.N. Doc. A/C.6/67/SR.21, ¶¶29, 60, 83 (Dec. 4, 2012) (Belarus, Republic of the Congo, Portugal); U.N. Doc. A/C.6/67/SR.22, ¶82 (Dec. 4, 2012) (Italy).

[9] The Articles on Responsibility of States for Internationally Wrongful Acts are an authoritative restatement of the customary international law of state responsibility. *See, e.g., Gustav F.W. Hamester GmbH. & Co. K.G. v. Republic of Ghana*, ICSID Case No. ARB/07/24, ¶171 (Jun. 18, 2010), https://www.italaw.com/sites/default/files/case-documents/ita0396.pdf; *Almås and Almås v. Republic of Poland*, P.C.A. Case No. 2015-13, ¶206 (Perm. Ct. Arb. Jun. 27, 2016), https://pcacases.com/web/sendAttach/1872.

The conduct of an entity, such as a state agency or instrumentality, empowered to exercise state authority and acting in that capacity is considered an act of the state under customary international law "even where the person or entity in question has overtly committed unlawful acts under the cover of its official status or has manifestly exceeded its competence." International Law Commission, Report of the International Law Commission on the Work of Its Fifty-Third Session, [2001] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/2001, at 45; *see* G.A. Res. 56/83, annex, Responsibility of States for Internationally Wrongful Acts, at 3 (art. 7). "[T]he question is whether they were acting with apparent authority." Report of the International Law Commission on the Work of Its Fifty-Third Session, [2001] 2 Y.B. Int'l L. Comm'n, U.N. Doc. A/CN.4/SER.A/2001, at 46. Such conduct will not be considered an act of the state only in the rare case where "the act bears no relationship to the [entity's] official function." *Estate of Jean-Baptiste Caire (France) v. United Mexican States*, 5 R.I.A.A. 516, 531 (June 7, 1929).[10]

In sum, unless and to the extent that the foreign state consents to the exercise of jurisdiction, its instrumentality is immune under customary

---

[10] The translation is Professor O'Keefe's. The original French text reads: "l'acte n'a eu aucun rapport avec la fonction officielle."

international law from the criminal jurisdiction of a forum state when it acts in the exercise of state authority, as opposed to in a private capacity.

## III. On the Facts Alleged, Halkbank Is Immune from Criminal Jurisdiction.

On the facts alleged in the indictment, Halkbank, a state instrumentality of the Republic of Turkey, enjoys under customary international law state immunity from criminal jurisdiction in respect of the acts that are the subject of the proceedings. In respect of its alleged criminal activities between 2012 and 2016 relating to Iranian funds, Halkbank was acting in the exercise of the state authority of Turkey, rather than in a private capacity.

By way of statutory exception to U.S. sanctions against Iran, the United States permitted Turkey to continue purchasing Iranian oil and gas so long as Turkey, first, designated a Turkish bank to hold the proceeds of sale owed to Iran and, second, restricted Iran's use of the proceeds to certain purposes, including bilateral trade and the purchase of humanitarian goods. A.20–21, 28; *see also* 22 U.S.C. § 8513a(d)(2), (4)(D). To this end, the government of Turkey designated Halkbank to hold the proceeds of Iran's oil sales. A.19–21, 23. It also made Halkbank responsible for ensuring that Iran accessed its oil proceeds in a manner consistent with U.S. sanctions. A.31–36, 42–44, 144. In performing these manifestly public functions that the government of Turkey

had empowered it to perform, Halkbank was acting in the exercise of state authority, not in a private capacity.

The indictment alleges that the government of Turkey directed and controlled Halkbank's execution of the alleged criminal activities. For example, in September 2013 and again in mid-2014, the Prime Minister of Turkey allegedly directed Halkbank to take part in the alleged scheme. A.43–44, 51–52. Other paragraphs allege that various "Turkish government officials both approved of and directed" aspects of Halkbank's participation in the alleged scheme. A.45. The indictment further alleges that the alleged scheme was designed in part to benefit the government of Turkey by artificially inflating Turkey's export statistics. A.34–35. Together, these allegations suggest that, in engaging in the alleged criminal activities, Halkbank was acting in the exercise, actual or apparent, of state authority, not in a private capacity.

It is not the case that Halkbank's alleged activities bore no relationship to its official function. To the contrary, they took the form of the very exercise of the state authority with which Halkbank had been empowered.

In sum, Halkbank, having been empowered by the government of Turkey to perform acts in the exercise of state authority, was acting in the

exercise of that authority in respect of the acts alleged in the indictment. Consequently, in respect of those acts, Halkbank enjoys absolute state immunity under customary international law from the criminal jurisdiction of a forum state.

## CONCLUSION

Under customary international law, Halkbank is immune from criminal proceedings in a U.S. court in respect of the acts alleged in the indictment. Accordingly, this Court should rule to this effect.

Dated:     August 7, 2023                         Respectfully submitted,

/s/ Christopher J. Paolella
Christopher J. Paolella
REICH & PAOLELLA LLP
111 Broadway, Suite 2002
New York, New York 10006
(212) 804-7090
cpaolella@reichpaolella.com
*Counsel for* Amicus Curiae
*Professor Roger O'Keefe*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29.1(c) because it contains 3,948 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was printed in Century Expanded BT 14-point font, a proportionally spaced typeface.

Dated:      August 7, 2023

/s/ Christopher J. Paolella
Christopher J. Paolella

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated:     December 12, 2023          /s/ Christopher J. Paolella
                                                     Christopher J. Paolella