## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 20-3499

Caption [use short title]

**Motion for:** Stay of the mandate pending the filing and disposition of a petition for a writ of certiorari.

United States of America v. Türkiye Halk Bankasi A.Ş. A/K/A Halkbank

Set forth below precise, complete statement of relief sought:

Defendant-appellant requests that this Court stay the issuance of the mandate in this appeal

pursuant to Fed. R. App. P. 41(d), pending the filing and disposition of its forthcoming

petition for a writ of certiorari to the United States Supreme Court and enter the enclosed

order, the language of which has been approved by both Defendant-appellant and

the U.S. Attorney's Office.

**MOVING PARTY:** Türkiye Halk Bankasi A.Ş.     **OPPOSING PARTY:** United States

- [ ] Plaintiff          [x] Defendant
- [x] Appellant/Petitioner     [ ] Appellee/Respondent

**MOVING ATTORNEY:** Robert M. Cary     **OPPOSING ATTORNEY:** Michael D. Lockard

[name of attorney, with firm, address, phone number and e-mail]

Williams & Connolly LLP

680 Maine Avenue SW, Washington, DC 20024

202-434-5000, rcary@wc.com

United States Attorney's Office for the S.D.N.Y.

One St. Andrew's Plaza, New York, NY 10007

212-637-2200, michael.lockard@usdoj.gov

Court- Judge/ Agency appealed from: Southern District of New York, Hon. Richard Berman

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1)?
[x] Yes  [ ] No (explain):_____

Opposing counsel's position on motion:
[x] Unopposed  [ ] Opposed  [ ] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes  [✓] No  [ ] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  [ ] Yes [ ] No
Has this relief been previously sought in this court?  [ ] Yes [ ] No

Requested return date and explanation of emergency:_____

Is the oral argument on motion requested?  [ ] Yes [x] No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  [x] Yes [ ] No  If yes, enter date: Appeal argued February 28, 2024

**Signature of Moving Attorney:**

*Robert M. Cary* **Date:** 12/12/2024     Service: [x] Electronic  [ ] Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 20-3499

## In the United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,
APPELLEE,

*v.*

TÜRKIYE HALK BANKASI A.Ş., A/K/A HALKBANK,
DEFENDANT-APPELLANT,

REZA ZARRAB, A/K/A RIZA SARRAF, CAMELIA JAMSHIDY, A/K/A
KAMELIA JAMSHIDY, HOSSEIN NAJAFZADEH, MOHAMMAD ZARRAB,
A/K/A CAN SARRAF, A/K/A KARTALMSD, MEHMET HAKAN ATILLA,
MEHMET ZAFER CAGLAYAN, ABI, SULEYMAN ASLAN, LEVENT
BALKAN, ABDULLAH HAPPANI,
DEFENDANTS,

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, NO. 1:15-CR-867-10
(THE HONORABLE RICHARD M. BERMAN, J.)*

**CONSENT MOTION FOR STAY OF MANDATE PENDING PETITION
FOR CERTIORARI BY DEFENDANT-APPELLANT**

ROBERT M. CARY
JOHN S. WILLIAMS
SIMON A. LATCOVICH
EDEN SCHIFFMANN
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue, S.W.
  Washington, DC 20024
  650 Fifth Avenue, Suite 1500
  New York, NY 10019
  Phone: (202) 434-5000
  Email: rcary@wc.com

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION...........................................................................................................1

STATEMENT................................................................................................................3

ARGUMENT.................................................................................................................5

I.      There Is Good Cause To Stay the Mandate ..........................................................8

II.     This Case Presents Three Substantial Questions Warranting Supreme
        Court Review ......................................................................................................10

        A.      The First Substantial Question Is Whether Courts Must Defer to
                the Executive's Non-Immunity Determination.......................................11

        B.      The Second Substantial Question Is Whether Foreign Sovereign
                Instrumentalities Have Absolute Criminal Immunity..............................14

        C.      The Third Substantial Question Is Whether Instrumentalities
                Have Absolute Immunity for Actions Taken in the Territory of
                Their Sovereign.....................................................................................17

        D.      The Questions Presented Are Important...................................................19

CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

Page

## CASES

*Arango v. Guzman Travel Advisors*, 761 F.2d 1527 (11th Cir. 1985) ................................. 15

*Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Insurance Plan*,
501 U.S. 1301 (1991) ...................................................................... 8

*Berizzi Brothers Co. v. The Pesaro*, 271 U.S. 562 (1926)...................................... 12

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) .............................................. 16

*Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*,
581 U.S. 170 (2017) ..................................................................... 10, 19

*Brown v. United States*, 12 U.S. 110 (1814) ............................................. 17, 20

*Cassirer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107 (2022) ......... 19

*CC/Devas (Mauritius) LTD. v. Antrix Corp.*,
No. 23-1201, 2024 WL 4394121 (U.S. Oct. 4, 2024) .............................. 19

*Chessman v. Teets*, 354 U.S. 156 (1957) ................................................. 20

*Coleman v. Tennessee*, 97 U.S. 509 (1878)............................................... 15

*Conkright v. Frommert*, 556 U.S. 1401 (2009)............................................ 9

*Doğan v. Barak*, 932 F.3d 888 (9th Cir. 2019) ......................................... 11

*Dow v. Johnson*, 100 U.S. 158 (1879) ................................................... 15

*Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018)................................. 20

*Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021) ....................... 19

*Fisher v. University of Texas*, 579 U.S. 365 (2016) ................................... 20

*Franchise Tax Board v. Hyatt*, 587 U.S. 230 (2019)................................... 20

*Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017).................................... 2

*In re Grand Jury Investigation of the Shipping Industry*,
186 F. Supp. 298 (D.D.C. 1960) ................................................... 12

ii

## Cases—continued:

*In re Investigation of World Arrangements*, 13 F.R.D. 280 (D.D.C. 1952) ............................ 12

*Jam v. International Finance Corporation*, 586 U.S. 199 (2019) ............................................ 19

*Manoharan v. Rajapaksa*, 711 F.3d 178 (D.C. Cir. 2013) .................................................... 11

*Maryland v. King*, 567 U.S. 1301 (2012) ............................................................................ 10

*Medellín v. Texas*, 552 U.S. 491 (2008) ............................................................................. 10

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) ............................................... 9

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. 2002) ........................................................... 7, 10

*Moore v. Texas*, 586 U.S. 133 (2019) ................................................................................ 20

*Opati v. Republic of Sudan*, 590 U.S. 418 (2020) ............................................................... 19

*People v. McLeod*, 25 Wend. 483 (N.Y. Sup. Ct. 1841) ...................................................... 12

*Philip Morris USA Inc. v. Scott*, 561 U.S. 1301 (2010) .......................................................... 8

*Republic of Hungary v. Simon*, 144 S. Ct. 2680 (2024) ....................................................... 19

*Republic of Mexico v. Hoffman*, 324 U.S. 30 (1945) ........................................................... 12

*Republic of Sudan v. Harrison*, 587 U.S. 1 (2019) ............................................................. 19

*Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018) ...................................................... 19

*Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui"*,
   639 F.2d 872 (2d Cir. 1981) .......................................................................................... 15

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) .................................... 20

*The Santissima Trinidad*, 20 U.S. 283 (1822) ..................................................................... 18

*Schooner Exchange v. McFaddon*, 11 U.S. 116 (1812) ................................................... 15, 18

*SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) ............................................................................ 14

*Türkiye Halk Bankasi A.Ş. v. United States*, 598 U.S. 264 (2023) ........................ 5, 7, 13, 20

**Cases—continued:**

*United States v. Smith*, 18 U.S. 153 (1820) ............................................................ 17

*United States v. Türkiye Halk Bankasi A.Ş.*, 120 F.4th 41 (2d Cir. 2024) ............................ 4

*United States v. Türkiye Halk Bankasi A.Ş.*, 16 F.4th 336 (2d Cir. 2021) ............... 2, 4, 6, 8

*Upper Skagit Indian Tribe v. Lundgren*, 584 U.S. 554 (2018) ...................................... 12

*Wulfsohn v. Russian Socialist Federated Soviet Republic*, 234 N.Y. 372 (1923) ...................... 18

*Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) .................................................. 11, 12, 13

## STATUTES AND RULES

28 U.S.C. §§ 1603-1605 ............................................................................. 16

Federal Rule of Appellate Procedure 41 .................................................................. *passim*

Supreme Court Rule 10 .............................................................................. 11

## OTHER AUTHORITIES

Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l L. 1 (2021) ................................................ 14

Ingrid (Wuerth) Brunk, *Foreign Official Immunity Determinations in U.S. Courts*, 51 Va. J. Int'l L. 915 (2011) .............................................................. 12

William S. Dodge & Chimène I. Keitner, *A Roadmap for Foreign Official Immunity Cases in U.S. Courts*, 90 Fordham L. Rev. 677 (2021) ................................... 13

Hazel Fox & Philippa Webb, *The Law of State Immunity* (3d ed. 2015) .......................... 16

G.A. Res. 59/38, U.N. Convention on Jurisdictional Immunities of States and Their Property (Dec. 2, 2004) ..................................................... 16

Restatement (Second) of Foreign Relations Law (1965) .................................................. 18

Restatement (Third) of Foreign Relations Law (1987) .................................................. 17

Stephen M. Shapiro et al., *Supreme Court Practice* (11th ed. 2019) .............................. 14, 19

# INTRODUCTION

Türkiye Halk Bankasi A.Ş. (Halkbank) respectfully requests that this Court stay its mandate pending the filing and disposition of Halkbank's forthcoming petition for a writ of certiorari regarding Halkbank's entitlement to criminal sovereign immunity. The same considerations that led this Court to stay its mandate following its original decision—indisputable irreparable harm, a circuit split on a core issue of immunity jurisprudence, and an unprecedented legal issue of international importance—are present once more. These considerations again strongly counsel in favor of a stay.

**The government consents to this request.**[1]

A stay is appropriate when "the petition [will] present a substantial question and … there is good cause for a stay." Fed. R. App. P. 41(d)(1). Here, there is once again ample "good cause for a stay." *Id.* Indeed, this Court routinely grants such stays in foreign sovereign immunity cases, and counsel has been unable to identify *any* foreign sovereign immunity case in which this Court has denied a motion to stay its mandate pending the filing of a petition for a writ of certiorari. That is for good reason: A sovereign would "lose the very immunity from suit to which [it] claim[s] to be

---

[1] The parties have also agreed to a *de bene esse* deposition of a government witness whom the government represents is critically ill. This agreement was made without waiving any rights or defenses to which Halkbank would be entitled, including its claim to sovereign immunity from criminal prosecution. The government otherwise consents to the stay, and both parties respectfully request this Court enter the appended order respecting the stay and deposition, the language of which has been agreed to by both parties.

entitled"—a loss that "is effectively unreviewable"—if it is required to litigate a case on the merits and only later held to be immune. *United States v. Türkiye Halk Bankasi A.Ş.*, 16 F.4th 336, 344 (2d Cir. 2021) (ECF No. 95-1) (quoting *Funk v. Belneftekhim*, 861 F.3d 354, 363 (2d Cir. 2017)). A stay is therefore appropriate here to prevent prejudice to Halkbank.

Halkbank's petition will also present "substantial question[s]." Fed. R. App. P. 41(d)(1). As before, the Court's recent opinion approves of the first criminal trial of a sovereign instrumentality anywhere in the world. In so doing, the Court decided three legal issues that are each worthy of Supreme Court review:

*First*, the Court concluded that it was bound to defer to the Executive's decision to indict Halkbank—a holding that splits with the Fourth Circuit and conflicts with Supreme Court precedent. Moreover, the deference rule blessed by this Court implicates basic principles of fairness and raises serious separation-of-powers concerns.

*Second*, despite acknowledging that foreign *sovereigns* are entitled to absolute criminal immunity, the Court concluded that *instrumentalities* are not. That holding parts ways with precedents dating back to the Founding, the longstanding rule of absolute criminal immunity in international law, and the foundational principle that a sovereign's instrumentalities acting under the sovereign's ownership and control *are the sovereign* for immunity purposes.

*Finally*, the Court applied the civil commercial-activities exception to Halkbank's conduct *in Türkiye*. The exception does not apply at all in criminal cases, but even if it

did, at common law Halkbank would remain immune even for commercial conduct undertaken within Türkiye's own territory.

Halkbank therefore respectfully requests this Court grant the consent motion to stay the Court's mandate pending the filing and disposition of Halkbank's forthcoming petition.

## STATEMENT

This appeal concerns whether Halkbank, a sovereign instrumentality and an integral part of the Turkish State, is immune from criminal prosecution for purported efforts to violate U.S. sanctions targeting Iran.

In 2017, the government indicted a Turkish-Iranian businessman named Reza Zarrab for allegedly helping Iran access oil and gas proceeds held at Halkbank. Zarrab eventually pleaded guilty and agreed to testify against other defendants in the case. In 2019, Halkbank was named in a six-count indictment alleging that between 2012 and 2016, it defrauded the United States, conspired to export U.S. financial services to Iran, and engaged in bank fraud and money laundering. At all relevant times, U.S. allies, such as Türkiye—a NATO ally—were permitted to purchase Iranian oil and gas without being sanctioned so long as certain conditions were satisfied. A.25-30. One of those conditions was that the U.S. ally needed to deposit the Iranian oil and gas proceeds into a bank within the borders of the U.S. ally, where the proceeds could be used for certain purposes. The Turkish government designated Halkbank, a Turkish state bank created by the Turkish legislature and under complete government control, to serve as Türkiye's

sole repository of Iranian oil and gas proceeds.  A.23; *see* A.20; Slip Op. 6-8; *see also* Türkiye Br. 8.[2]

The indictment contends that Halkbank, at the direction of the Turkish government, conspired with Zarrab to help Iran access these proceeds.  A.33-34. According to the indictment, after the funds left Halkbank, the funds made their way to Dubai, A.32-35, 44, where, after several more transactions, approximately 5% of the funds passed through U.S. correspondent accounts, A.44; *see* A.21-22, 32-33, 52. Halkbank's purported involvement in these transactions occurred entirely in Turkish sovereign territory and ceased after the funds left the bank.

At the district court, Halkbank filed a motion to dismiss on sovereign immunity grounds, which was denied.  *See* A.103-18.  Halkbank appealed, and simultaneously moved to stay the prosecution pending interlocutory review, which was also denied. D. Ct. ECF No. 686.  This Court, however, reversed that denial, staying the prosecution pending determination of the appeal.  ECF No. 49.

As to the merits, this Court originally affirmed the district court's judgment.  The Court concluded it had interlocutory appellate jurisdiction over Halkbank's immunity claim because "appeal from [a] final judgment cannot repair the damage caused to a sovereign that is improperly required to litigate a case."  *Türkiye Halk Bankasi*, 16 F.4th

---

[2] The Court's decision can be found at ECF No. 226.  It is also published at 120 F.4th 41.

at 344 (alternations in original).  It concluded, however, that Halkbank was not entitled to immunity under the Foreign Sovereign Immunities Act (FSIA), or at common law. Slip Op. 9-10.

Halkbank sought a stay of the Court's original mandate pending the filing of its first certiorari petition.  It argued it would "suffer irreparable harm if it is required to litigate and perhaps even try a case from which it is immune."  ECF No. 108, at 14. The Court granted the stay.  ECF No. 116.

The Supreme Court granted Halkbank's petition for certiorari and vacated and remanded in relevant part.  The Court held that the FSIA is a purely civil statute, but concluded this Court "did not fully consider the various arguments regarding common-law immunity that the parties press[ed] in [the Supreme] Court."  *Türkiye Halk Bankası A.Ş. v. United States*, 598 U.S. 264, 280 (2023).

On remand, this Court again concluded it must defer to the Executive, Slip Op. 18-27, and that the Executive's determination was "consistent" with common-law immunity, Slip Op. 20.  Halkbank filed for rehearing, which the Court denied on December 6, 2024.  ECF No. 237.

## ARGUMENT

This Court frequently stays its mandate to allow a party to seek certiorari

pursuant to Rule 41(d),[3] and undersigned counsel is unaware of any foreign sovereign immunity case where this Court has denied a motion to stay the mandate pending the filing of a petition for certiorari.[4] Here, a stay is clearly justified for substantially the same reasons that led this Court to grant similar relief prior to the disposition of Halkbank's first petition. Halkbank will unquestionably be irreparably harmed absent a stay. *See* Fed. R. App. P. 41(d)(1). Indeed, this Court has recognized as much on three occasions: (i) when it stayed the prosecution pending this Court's review, ECF No. 49; (ii) when it concluded Halkbank could immediately appeal pursuant to the collateral-order doctrine, *Türkiye Halk Bankasi*, 16 F.4th at 344; and (iii) when it stayed its original mandate pending the filing of Halkbank's first petition, ECF No. 116. Under this Court's precedents, the certainty of irreparable harm justifies a continuation of the

---

[3] *See, e.g., In re Nine W. LBO Fraudulent Conv. Litig.*, No. 20-3257(L) (2024); *CFPB v. Law Offs. of Crystal Moroney*, No. 20-3471 (2023); *Belya v. Kapral*, No. 21-1498 (2023); *In re Sears Holdings Corp.*, No. 20-1846(L), No. 20-1953(XAP) (2022); *In re the Application of the Fund*, No. 20-2653 (2021); *United States v. Gatto*, No. 19-783 (2021); *Rodas Rosales v. Garland*, No. 17-2536 (2021); *Ass'n for Accessible Medicines v. James*, No. 19-183 (2021); *Rodriguez v. Garland*, No. 18-1070 (2020); *Fischer v. Forrest*, No. 18-2959 (2020); *Scott v. Chipotle Mex. Grill, Inc.*, No. 18-359 (2020); *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp.*, No. 18-3667 (2020); *United States v. Blaszczak*, No. 18-2811 (2020); *Cohen v. G&M Realty L.P.*, No. 18-498 (2020); *United States v. Johnson*, No. 18-1503 (2020); *New York v. UPS, Inc.*, No. 17-1993 (2020).

[4] *See, e.g., United States v. Türkiye Halk Bankasi A.Ş.*, No. 20-3499 (2022); *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 16-3303 (2018); *Peterson v. Islamic Republic of Iran*, No. 15-690 (2018); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, No. 14-1963 (2016); *NML Cap., LTD. v. Banco Central de la Republica Argentina*, No. 10-1487 (2011). Counsel is confident it has completely canvassed such cases dating back at least as far as 2010, which is as far back as electronic databases reliably include comprehensive records.

stay even if there were only a slight chance of the petition's success. *See Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (Even where "the likelihood of success is not high," a stay is appropriate if "the balance of hardships favors the applicant.").

Here, though, there is a substantial probability that the Supreme Court will grant review because this unprecedented case squarely presents three important questions that will determine whether and when the federal government can prosecute foreign sovereigns and their instrumentalities. This Court's holding that it must defer to the government's decision to indict Halkbank vastly expands the limited deference to which the Executive was entitled at common law, creating a circuit split with the Fourth Circuit. The holding also tees up fundamental separation-of-powers questions by "relegating courts to the status of potted plants." *Türkiye Halk Bankasi*, 598 U.S. at 286 (Gorsuch, J., concurring in part and dissenting in part). In addition, this Court's conclusions on substantive immunity open the door, for the first time in world history, to criminal prosecutions of sovereign instrumentalities. The Court's holding that instrumentalities are not entitled to their sovereigns' absolute criminal immunity breaks with centuries of U.S. and international practice. And the Court's application of the commercial-activities exception to conduct *within the foreign sovereign's own territory* expands that exception far beyond anything permitted under common law. Each question is important and merits Supreme Court review.

## I.      There Is Good Cause To Stay the Mandate

As this Court has recognized on three occasions, Halkbank will suffer irreparable harm if it is required to try a case from which it is immune.   No post-trial appellate proceedings can remedy the harm of subjecting a sovereign to litigation.   Accordingly, a stay should issue.

In considering whether there is good cause for a stay, courts must "assum[e] the applicant's position on the merits is correct," and then evaluate whether, in that situation, there is "a likelihood of irreparable harm if the judgment is not stayed." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers); *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers).   Here, when one assumes Halkbank is entitled to immunity, there is not simply a *likelihood* of irreparable harm—there is a certainty.

As this Court previously held in this very case, "an appeal from a final judgment *cannot repair the damage* caused to a sovereign that is improperly required to litigate a case." *Türkiye Halk Bankasi*, 16 F.4th at 344 (emphasis added) (cleaned up).   If the Court allows the case to move forward while Halkbank seeks Supreme Court review, Halkbank will "lose the very immunity from suit to which [it] claim[s] to be entitled." *Id.* (citation omitted).   That loss "is *effectively unreviewable* after final judgment."   *Id.* (emphasis added) (citation omitted).

The Court's analysis in this regard is in lock-step with binding precedent.   The Supreme Court has recognized that "the legal and practical value of [immunity from

suit] would be destroyed if it were not vindicated before trial." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (citation omitted). This Court's decisions to stay the proceedings during Halkbank's appeal and to stay its mandate pending Halkbank's first certiorari petition correctly followed this precedent. ECF Nos. 49, 116.

The balance of harms further supports a stay. Although this case has been stayed for some time, a short, additional stay to allow the Supreme Court to decide whether to hear this case will not prejudice the government. That point is amply demonstrated by the fact that the government itself sought (and obtained) 84 days in briefing extensions already on this issue—including a briefing extension in the Supreme Court and *two* briefing extensions during these remand proceedings. *See* U.S. Ext. Ltr. (June 7, 2022); ECF Nos. 188, 193, 204, 207. On the other hand, pushing forward with unprecedented criminal discovery, pretrial litigation, and potentially trial will undeniably irreparably harm Halkbank.

The public interest also favors a stay. *See Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers). The significance of the Court's decision cannot be overstated. Never once has a sovereign instrumentality been made to stand criminal trial in the courts of a co-equal sovereign. The Court's decision is in conflict with the basis of sovereign immunity jurisprudence—a body of law built upon "the absolute independence of every sovereign" that "helps to induce each nation state, as a matter of international comity, to respect the independence and dignity of every other,

including our own." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 179 (2017) (cleaned up).

And importantly, the basis for the Court's decision—Executive deference in a criminal case—also implicates foundational principles of our system of government. The public has a substantial right in ensuring its courts do not lightly "set aside first principles." *Medellín v. Texas*, 552 U.S. 491, 524 (2008). It is thus in the public's interest that the Supreme Court be permitted to decide whether to weigh in on these issues before this groundbreaking prosecution proceeds.

## II. This Case Presents Three Substantial Questions Warranting Supreme Court Review

The second stay consideration—whether Halkbank's petition will present "substantial question[s]"—is also satisfied. Fed. R. App. P. 41(d)(1). In the ordinary case, a petition presents a substantial question when there is "a reasonable probability [that the Supreme Court] will grant certiorari" and "a fair prospect that th[e] Court will then reverse," *Maryland v. King*, 567 U.S. 1301, 1302-03 (2012) (Roberts, C.J., in chambers) (cleaned up), but "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the party] will suffer absent the stay," *Mohammed*, 309 F.3d at 101. Supreme Court review is most likely when an appellate court (1) "has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court;" (2) "has entered a decision in conflict with the decision of another United States court of appeals;" or (3) "has decided an

important question of federal law that has not been, but should be, settled by [the Supreme] Court." S. Ct. R. 10(a), (c). Halkbank's petition will present at least three questions that meet these criteria.

### A. The First Substantial Question Is Whether Courts Must Defer to the Executive's Non-Immunity Determination.

This Court held that the Executive's decision to indict required the Court to reject Halkbank's immunity claim. That holding—in a criminal case where the government is necessarily a party—undermines fair and impartial justice. It also breaks with Supreme Court precedents and the law in other circuits.

This Court presented its deference holding as the clear consequence of Supreme Court civil-immunity precedents, where immunities have (the Court concluded) always "depended on the consent of the Executive." Slip Op. 14. But that reasoning is undermined by Fourth Circuit precedent, which has rejected that rule, *see Yousuf v. Samantar*, 699 F.3d 763, 773 (4th Cir. 2012), and the circuit court opinions that have, notwithstanding that precedent, expressly declined to consider the deference afforded to the Executive in civil cases, *see Doğan v. Barak*, 932 F.3d 888, 893 (9th Cir. 2019); *Manoharan v. Rajapaksa*, 711 F.3d 178, 180 n.* (D.C. Cir. 2013). And it is also undermined by the Supreme Court's remand order. After all, the government presented this same argument to this Court during the initial appeal, and this Court accepted it. The government then presented the same argument to the Supreme Court, which nonetheless vacated and remanded. U.S. Br. 8, 21-26. These circumstances suggest the

11

Supreme Court did not agree with the government's (and this Court's) reading of prior precedents as clearly resolving the deference issue.

This Court's conclusions are also in tension with the case law. The conclusive deference this Court afforded to the Executive is "inconsistent with *Schooner Exchange* itself." Ingrid (Wuerth) Brunk, *Foreign Official Immunity Determinations in U.S. Courts*, 51 Va. J. Int'l L. 915, 926 (2011). It cannot be squared with how lower courts and the Supreme Court treated Executive immunity determinations at common law. *See, e.g.*, *Berizzi Bros. Co. v. The Pesaro*, 271 U.S. 562, 574 (1926); *People v. McLeod*, 25 Wend. 483, 597-99 (N.Y. Sup. Ct. 1841). And it is in tension with the only two common-law cases to address the immunities owed to instrumentalities in criminal cases—neither of which deferred to the Executive. *See In re Grand Jury Investigation of the Shipping Indus.*, 186 F. Supp. 298, 318-20 (D.D.C. 1960); *In re Investigation of World Arrangements*, 13 F.R.D. 280, 290 (D.D.C. 1952). Precedent, of course, precludes courts from recognizing immunity "on new grounds" that the Executive had not seen fit to recognize. *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945). But no Supreme Court case requires courts to "abdicate their judicial duty to decide the scope of … immunity" in the cases that come before them. *Upper Skagit Indian Tribe v. Lundgren*, 584 U.S. 554, 574 (2018) (Thomas, J., dissenting).

The Court's deference holding also split with *Samantar*. 699 F.3d at 773. There, the Fourth Circuit (also on remand from the Supreme Court) was likewise called upon to determine the deference afforded to the Executive's non-immunity determinations.

After analyzing the same authorities cited here, the Fourth Circuit concluded that requiring deference to the Executive's conduct-based immunity determinations was without "constitutional basis." *Id.* Accordingly, the court held that the Executive's "determination[s] regarding conduct-based immunity" were "not controlling." *Id.* That squarely conflicts with this Court's determination that it must grant conclusive deference to the government's *conduct-based* immunity arguments.

The Fourth Circuit's analysis is correct—there is no constitutional basis to defer conclusively to the Executive's non-immunity determinations, and certainly no basis to defer *in a criminal case*. Deference there is "in tension with this notion of there being some absolute immunity in the … criminal law realm." S. Ct. Tr. at A.247 (Jackson, J.). After all, if the decision to indict amounts to a conclusive determination of non-immunity, then absolute criminal immunity does not exist.

Deference in the criminal context also gravely undermines the separation of powers upon which our government is based. *See* William S. Dodge & Chimène I. Keitner, *A Roadmap for Foreign Official Immunity Cases in U.S. Courts*, 90 Fordham L. Rev. 677, 679 (2021). The harm done to the "separation-of-powers principles inherent in the Constitution's structure" when the Executive is permitted "to develop … the common law of immunity and to apply it to particular cases"—tasks that are "fundamentally judicial"—is obvious to jurists and scholars alike. Brunk & Dodge Amicus Br. at 5-6. Justice Gorsuch, for instance, sounded the alarm when he highlighted the "separation-of-powers concerns" that come with Executive deference.

*Türkiye Halk Bankasi*, 598 U.S. at 286 (Gorsuch, J., concurring in part and dissenting in part); Curtis A. Bradley, *Conflicting Approaches to the U.S. Common Law of Foreign Official Immunity*, 115 Am. J. Int'l L. 1, 19 (2021).  And he was surely not the only Justice with similar concerns, for as the Supreme Court affirmed only recently, "concentrat[ing] the roles of prosecutor, judge, and jury in the hands of the Executive … is the very opposite of the separation of powers that the Constitution demands."  *SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024).  That is what this Court has done for purposes of common-law immunity.

This Court's deference holding raises important questions about these core tenets of our system of government.  Certiorari is often granted in such cases, as well as to resolve circuit splits and when a "court of appeals has allegedly misconstrued, misapplied, or misconceived an applicable Supreme Court opinion."  Stephen M. Shapiro et al., *Supreme Court Practice* § 4.5 (11th ed. 2019).  These circumstances are present here, which counsel strongly in favor of a stay.

### B.     The Second Substantial Question Is Whether Foreign Sovereign Instrumentalities Have Absolute Criminal Immunity.

Never in history has a court allowed a criminal trial of a sovereign instrumentality.  Instead, instrumentalities have always received absolute immunity.  This Court broke with that tradition and in so doing departed from the uniform practice of nations.

There is no dispute that sovereigns are entitled to absolute immunity and that prosecuting a state—even for commercial conduct—would amount to a "derogation of … common law immunity." S. Ct. Tr. at A.207; Slip Op. 27. Since *Schooner Exchange v. McFaddon*, our courts have always recognized "a class of cases" in which sovereigns are immune. 11 U.S. 116, 137 (1812). And this class of cases has always included immunity from "arrest [and] detention," *id.*, meaning a sovereign "is exempt from … criminal jurisdiction," *Dow v. Johnson*, 100 U.S. 158, 165 (1879). Accordingly, for more than 250 years, "criminal actions were never brought" against sovereigns. S. Ct. Tr. at A.184 (Kagan, J.).

These undisputed principles should have resolved this case because the jurisdictional immunities owed sovereigns have always extended to their instrumentalities in equal measure. At common law, for instance, "[t]he *same immunity* [owed sovereigns] extended to commercial entities owned by foreign governments." *Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1534 (11th Cir. 1985) (emphasis added); *see Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui"*, 639 F.2d 872, 879 (2d Cir. 1981) (Friendly, J.) ("[U]nder the common law in 1791 … a suit against a foreign government *or* an instrumentality thereof … could not be maintained at all." (emphasis added)). That is, at common law, the "same exemption from … criminal jurisdiction" that applied to the sovereign applied to their instrumentalities as well. *Coleman v. Tennessee*, 97 U.S. 509, 516 n.1 (1878) (referencing *Schooner Exchange*). Even the adoption

of the commercial-activities exception in civil cases was consistent with this trend—the exception applying to *both* sovereigns and instrumentalities. *See* 28 U.S.C. §§ 1603-05.

Affording sovereigns absolute criminal immunity but not instrumentalities is out of step with these authorities. That result also leaves several questions unanswered: Did the adoption of the restrictive theory change the civil immunities owed to both sovereigns and instrumentalities but only alter the criminal immunities owed to the latter? Why, as a matter of comity, can an export-import bank be indicted but not a sovereign? And why can a *foreign* instrumentality be indicted when in the *domestic* instrumentality context, federal- and state-owned corporate instrumentalities are considered "part of the Government"? *Biden v. Nebraska*, 143 S. Ct. 2355, 2367 (2023); *see* Halkbank Br. 31-33.

Eliminating the immunity owed to instrumentalities is also a departure from the uniform practice of nations. "Without exception," common-law countries that have adopted a commercial-activities exception have limited its application to *civil* cases. Hazel Fox & Philippa Webb, *The Law of State Immunity* 92 (3d ed. 2015); *see also* Halkbank Br. 20 & n.1 (collecting authorities from the U.K., Canada, Israel, Pakistan, Singapore, and South Africa). Leading multinational immunity authorities are in accord. *See* G.A. Res. 59/38, ¶ 2, U.N. Convention on Jurisdictional Immunities of States and Their Property (Dec. 2, 2004) (civil immunity exceptions do not apply in "criminal proceedings"). And never—not once—have another nation's courts subjected a

sovereign instrumentality to criminal trial, whether for commercial conduct or otherwise.

The general and customary practice of nations to exempt instrumentalities from criminal prosecution is the definition of customary international law. *See United States v. Smith*, 18 U.S. 153, 160 (1820) ("[T]he law of nations … may be ascertained by consulting … the general usage and practice of nations …."); Restatement (Third) of Foreign Relations Law § 102(2) (1987). And importantly, in our government, only Congress can part ways with that practice. *See Brown v. United States*, 12 U.S. 110, 128-29 (1814).

The Court's deference holding here creates tension with that law and subjecting an instrumentality to criminal prosecution is ahistorical both here and abroad. Doing so amounts to "a dangerous disruption of international comity," Sovereigns' Amicus Br. at 2, and the Supreme Court's considered judgment should be brought to bear on these substantial issues before Halkbank becomes the first instrumentality in history to endure a criminal trial in the courts of another co-equal sovereign.

## C. The Third Substantial Question Is Whether Instrumentalities Have Absolute Immunity for Actions Taken in the Territory of Their Sovereign.

This Court held that Halkbank can be indicted for commercial conduct it engaged in within Türkiye's own territory. But at common law, the commercial-activities exception was never known to reach any conduct (commercial or otherwise) in the foreign sovereign's own territory. The Court's holding thus departs from

precedent and vastly expands the common-law commercial-activities exception beyond anything previously known.

Since the Founding, sovereign immunity jurisprudence has been built on the belief that "[t]he jurisdiction of the nation *within its own territory* is necessarily exclusive and absolute." *Schooner Exchange*, 11 U.S. at 136 (emphasis added). In *Schooner Exchange*, for example, Chief Justice Marshall evaluated the limits placed on the domestic sovereign when another co-equal sovereign "enters [its] territory." *Id.* at 137. And the commercial-activities exception in civil cases considers whether a foreign sovereign implicitly waives immunity when it engages in "commercial activity *outside its territory*," *i.e.* in the territory of another sovereign. Restatement (Second) of Foreign Relations Law § 69 (1965) (emphasis added); *see* Halkbank Br. 42 (collecting cases). Since the Founding, however, "a foreign sovereign cannot be compelled to appear in our Courts, or be made liable to their judgment, *so long as he remains in his own dominions*, for the sovereignty of each is *bounded by territorial limits*." *The Santissima Trinidad*, 20 U.S. 283, 353 (1822) (emphases added). In other words, within a sovereign's own territory, "its jurisdiction is exclusive and absolute," "susceptible of no limitation not imposed by itself." *Wulfsohn v. Russian Socialist Federated Soviet Republic*, 234 N.Y. 372, 376 (1923).

The indictment is in tension with these authorities. It focuses on actions that were taken by Halkbank *in Türkiye*. Indeed, all of Halkbank's alleged conspiring, bank-transfer activity, and cooperation with Zarrab occurred *in Türkiye*. Halkbank is entitled to immunity for this conduct, even if the civil commercial-activities exception applied

to this criminal case.

### D. The Questions Presented Are Important.

The questions raised by the Court's opinion are particularly substantial because of their practical importance, which has always been "of major significance in determining whether the writ of certiorari will issue." *Supreme Court Practice*, *supra*, § 4.11.

The core question presented in this case—whether a sovereign instrumentality can be subject to criminal prosecution—is plainly a matter of great importance. The granting of Halkbank's first petition shows as much. And the fact that the Supreme Court routinely grants review even in civil sovereign immunity cases that do not implicate the same dignity concerns reinforces that conclusion. Two such cases are currently pending. *See Republic of Hungary v. Simon*, 144 S. Ct. 2680 (2024); *CC/Devas (Mauritius) LTD. v. Antrix Corp.*, No. 23-1201, 2024 WL 4394121 (U.S. Oct. 4, 2024). And the Court has heard numerous others in recent years. *See, e.g., Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107 (2022); *Federal Republic of Germany v. Philipp*, 592 U.S. 169 (2021); *Opati v. Republic of Sudan*, 590 U.S. 418 (2020); *Republic of Sudan v. Harrison*, 587 U.S. 1 (2019); *Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018); *Bolivarian Republic*, 581 U.S. at 170; *cf. Jam v. Int'l Fin. Corp.*, 586 U.S. 199 (2019). The Supreme Court has a considerable interest in weighing in on this issue of comparatively greater significance before "the states go[] wild" and before other sovereigns feel empowered

to follow a similar path. S. Ct. Tr. at A.192 (Barrett, J.).[5]

The many other questions addressed by the Court are likewise of obvious significance. The Court has conclusively deferred to the Executive in a criminal case, which implicates due process concerns and "separation-of-powers concerns." *Türkiye Halk Bankasi*, 598 U.S. at 286 (Gorsuch, J., concurring in part and dissenting in part). It has departed from customary international law in the absence of action by the Legislature, which conflicts with Supreme Court precedent. *See Brown*, 12 U.S. at 128-29. The Court has also suggested that the Executive would be permitted to halt a state prosecution, Slip Op. 35 n.12, which implicates important issues of federalism, *see Türkiye Halk Bankasi*, 598 U.S. at 287 (Gorsuch, J., concurring in part and dissenting in part).

Each of these conclusions are of substantial significance and each makes plain what has been clear from the start: This Court's opinion will have "ramifications beyond this case." S. Ct. Tr. at A.228 (Alito, J.). The Supreme Court should be permitted to consider each of these issues before Halkbank is made to answer these criminal charges.

---

[5] On numerous occasions, the Court has granted certiorari twice to fully resolve a single issue on appeal. *See, e.g.*, *Franchise Tax Bd. v. Hyatt*, 587 U.S. 230 (2019); *Moore v. Texas*, 586 U.S. 133 (2019); *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018); *Fisher v. Univ. of Tex.*, 579 U.S. 365 (2016); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959); *Chessman v. Teets*, 354 U.S. 156 (1957).

*     *     *

In sum, irreparable harm is a certainty and Halkbank's forthcoming petition will present at least three substantial questions that merit review. The government consents to the relief sought. As this Court has recognized before on three occasions, good cause exists to stay this unprecedented prosecution until Halkbank's immunity claim is conclusively resolved.

**CONCLUSION**

For these reasons, the mandate should be stayed pending the filing and disposition of Halkbank's petition for a writ of certiorari. The Court should enter the proposed order appended to this filing, the language of which has been agreed to by both Halkbank and the U.S. Attorney's Office.

Respectfully submitted,

*/s/ Robert M. Cary*
ROBERT M. CARY
  *COUNSEL OF RECORD*
JOHN S. WILLIAMS
SIMON A. LATCOVICH
EDEN SCHIFFMANN
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *650 Fifth Avenue, Suite 1500*
  *New York, NY 10019*
  *Phone: (202) 434-5000*
  *Fax: (202) 434-5029*
  *Email: rcary@wc.com*

DECEMBER 12, 2024

21

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Robert M. Cary, counsel for appellant and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 27, that the attached Consent Motion for Stay of Mandate Pending Petition for Certiorari by Defendant-Appellant is proportionally spaced, has a typeface of 14 points or more, and contains 5,157 words.


DECEMBER 12, 2024                          /s/ Robert M. Cary
                                           ROBERT M. CARY

## CERTIFICATE OF SERVICE

I, Robert M. Cary, counsel for appellant and a member of the Bar of this Court, certify that, on December 12, 2024, a copy of the attached Consent Motion for Stay of Mandate Pending Petition for Certiorari by Defendant-Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all the parties required to be served have been served.

DECEMBER 12, 2024

/s/ Robert M. Cary
ROBERT M. CARY